IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANDREA CODY, TRAEVION LOVE,
BRITTANY BURK, and DANA WHITFIELD
individually and on behalf of all others
similarly situated,

       Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY and
ALLSTATE COUNTY MUTUAL
INSURANCE COMPANY,

       Defendants.

CASE NO. 3:19-cv-1935

Class Action

## CLASS ACTION COMPLAINT FOR DAMAGES

The Plaintiffs, Andrea Cody, Traevion Love, Brittany Burk, and Dana Whitfield, on behalf of themselves and all others similarly situated, files this Class Action Complaint against Defendants Allstate Fire and Casualty Insurance Company ("Allstate Fire") and Allstate County Mutual Insurance Company ("Allstate County") (collectively, "Defendants" or "Allstate") and in support thereof state the following:

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiffs who were named insureds under separate (but materially identical) Allstate automobile policies issued for automobile physical damage including comprehensive and collision coverage, which promised payment of "Actual Cash Value" or ACV in the event of a total loss.

2. Defendants are large auto insurance carriers operating in Texas. One of the coverages Defendants offer is comprehensive and collision coverage. Upon information and belief,

Defendant systematically underpaid Plaintiffs and thousands of other putative Class Members amounts owed to its insureds pursuant to their promise to pay the ACV of total loss vehicles insured with comprehensive and collision coverage.

3. This lawsuit is brought by the Plaintiffs and all other similarly situated insureds that have suffered damages due to Defendant's practice of refusing to pay the full ACV of total-loss vehicles to first-party insureds who suffered a total loss of their vehicles insured under a physical damage policy containing comprehensive and collision coverages.

4. Pursuant to its uniform promise, Allstate owes insureds costs reasonably likely to be incurred in purchasing a vehicle to replace the total-loss vehicle, specifically sales tax, title fees, registration fees, safety inspection fees and emissions inspection fees. Nevertheless, Allstate sometimes fails to pay sales tax and title fees to total-loss insureds, and always fails to pay the full amount of registration fees, safety inspection fees and emissions inspection fees. This failure to pay the full ACV of the total-loss vehicle constitutes a breach of contract.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiffs are members of the putative class, which consists of at least 100 members and Plaintiffs and/or putative class members and Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

6.  Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

7.  At all times material hereto, Andrea Cody is and was a person domiciled and residing in Harris County, Texas, and is a citizen of the State of Texas.

8.  At all times material hereto, Traevion Love is and was a person domiciled and residing in Collin County, Texas, and is a citizen of the State of Texas.

9.  At all times material hereto, Brittany Burk is and was a person domiciled and residing in Henderson County, Texas, and is a citizen of the State of Texas.

10. At all times material hereto, the Plaintiff Dana Whitfield is and was a person domiciled and residing in Harris County, Texas, and is a citizen of the State of Texas.

11. At all times material hereto, Allstate Fire is and was a corporation located in the State of Illinois and authorized to transact insurance in the State of Texas. Defendant's principal place of business and headquarters are both located in the State of Virginia.  Allstate Fire may be served through its registered agent for service, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

12. At all times material hereto, Allstate County is and was a corporation located in the State of Texas and authorized to transact insurance in the State of Texas. Defendant's principal place of business and headquarters are both located in the State of Texas.  Allstate County may be served through its registered agent for service, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## FACTUAL ALLEGATIONS

13. Defendants' standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in all Allstate auto policies issued by Defendant in Texas.

14. Defendants are both insurers within the parent Allstate Insurance Company umbrella, and use virtually identical policy language, adjusters, claims practices, internal processes and procedures. The policy language applicable to Plaintiffs and every putative Class Member is the same in all material respects.

## THE ALLSTATE INSURANCE POLICY

15. Because Allstate Fire and Allstate County utilize the same standard and uniform policies containing the same policy language, Plaintiffs refer herein to the Policy, for simplicity's sake.

16. The Policy, under the section entitled "Protection Against Loss to the Auto" states that "Auto Collision Coverage" coverage means, *inter alia*, coverage for loss to the insured vehicle caused by collision with another object or upset of the vehicle. Policy at 18.

17. In the "Auto Comprehensive Coverage," Defendants assert they will cover loss not caused by collision. Policy at 19. Loss is not defined in the Policy.

18. A "loss" thus triggers coverage and payment under the Policy.

19. The limit of liability asserted in the Policy is the "actual cash value of the vehicle at the time of loss." Actual cash value is not defined in the Policy. The "limit of liability" includes other provisions applicable to partial losses, but inapplicable to total losses. Defendants settle and adjust every total-loss claim under the ACV Policy provision.

20. Because the loss triggers coverage and payment under the Policy, and because the limit of liability is the ACV of the vehicle, a "total" loss of the vehicle necessarily triggers payment of the limit of liability – the ACV of the insured vehicle.

21. There is no difference, for purposes of the duty to pay the ACV of the insured vehicle on a first-party total loss claim, between a collision total-loss claim and a comprehensive total-loss claim.

22. The Policy language does not further define ACV as including: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle; or (4) any provision linking the ACV determination to salvage retention (indeed, ACV is determined "at the time of loss").

23. The Policy language applies to all covered autos irrespective of ownership interests. The Policy defines owned autos as including leased autos.

24. The promise to pay ACV includes an obligation to pay sales tax in Texas equal to at least 6.25%[1] of the underlying value of the insured vehicle at the time of loss, along with mandatory title fees, registration fees, safety inspection fees and emissions inspection fees.

25. Texas law is clear that ACV includes costs reasonably likely to be incurred in property replacement. Ghoman v. N.H. Ins. Co., 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001) (Actual cash value is market value and "means repair or replacement costs less depreciation."); Tolar v. Allstate Tex. Lloyd's Co., 772 F. Supp. 2d 825 (N.D. Tex. 2011) (noting that Texas courts define ACV as "cost of replacement minus depreciation" and holding that it is "settled law" that insurers may not deduct sales tax from ACV payments). In Ghoman, the

---

[1] Texas sales tax is 6.25%. Additionally, some counties impose a local sales tax of up to 2% as allowed by state law.

court concluded that "replacement costs" means any costs likely to be incurred in replacement, including, among other things, sales tax. Ghoman at 934.

26. Further, the Texas Department of Insurance defines ACV as the cost to replace the insured property minus depreciation. See TDI Comm'r Bulletin #B-0068-08.   A reasonable insured, including Plaintiffs and all putative class members, would believe that Defendants' promise to pay ACV in the event of a total-loss included a promise to pay the aforementioned mandatory taxes and fees.

27. Defendants, by promising to pay the ACV of the vehicle in the event of a total loss, promised to pay sales tax and fees that are not only reasonably likely to be incurred, but are in fact mandatory – title fees, registration fees, and inspection fees.

## SALES TAX AND MANDATORY FEES

28. Defendant's Policy unambiguously provides coverage for sales tax and mandatory fees as elements of the promised ACV payment for total-loss insured vehicles. Alternatively, coverage for sales tax and mandatory transfer fees is a reasonable interpretation of an ambiguous term, and thus the policy should be construed to provide such coverage. Either way, Defendant's policy promises coverage of sales tax and mandatory transfer fees.

29. Texas law imposes a mandatory title fee of $33.00 on the purchase of any vehicle, including, necessarily, the purchased replacement of a total loss vehicle. Tex. Stat. § 501.138(1).

30. In fact, in Texas, it is illegal to drive a vehicle on the road absent proper certificate of title for which the $33.00 fee is imposed. Tex. Stat. § 501.022.

31. Texas law also makes it illegal to drive a vehicle without proper registration or tag. When a vehicle is sold, any existing registration expires, and the buyer must secure new

registration. Texas imposes a fee of $50.75 on the registration, and various counties impose additional fees ranging from $10.00 to $31.50. Thus, the costs for registration incurred in replacement ranges from $50.75 to $92.25.

32. Every vehicle in Texas must pass a yearly inspection (which must be proved prior to registration) for safety and, in some counties, for emissions, which range from $7.50 to $14.25.

33. Title fees, registration fees, and inspection fees are likely to be incurred – indeed, they are necessarily incurred – upon replacement of the total-loss vehicle.

34. Further, sales tax is imposed on every vehicle purchase, including, necessarily, purchases to replace a total-loss vehicle. Sales tax is therefore also reasonably likely to be incurred upon replacement of the total-loss vehicle.

35. Allstate's Policy promises to pay such taxes and fees in the event of a total loss.

36. Allstate recognizes as much in that Allstate sometimes does in fact pay sales tax and title fees.

37. However, Allstate never pays inspection fees and either does not pay registration fees at all or pays only $2.50 in registration fees, notwithstanding the actual cost for registration fees ranges from $50.75 to $92.25.

38. Every Allstate insured, including Plaintiffs, was underpaid because, at minimum, Allstate did not pay the promised inspection fees and underpaid (or did not pay) the promised registration fees.

39. Some Allstate insureds, including Plaintiff Brittany Burk, was underpaid because Allstate did not pay sales tax, title fees, registration fees and/or any inspection fees.

40.  Defendants promise to pay the adjusted vehicle value, plus costs reasonably likely to be incurred in replacement (sales tax, title fees, registration fees, and inspection fees), minus a deductible (and any applicable salvage retained value). By uniformly underpaying (or not paying at all) sales tax, title fees, registration fees, and inspection fees, Defendants breach its contract with every insured, including Plaintiffs.

41.  Such underpayment (or entire lack of payment) constitutes a breach of contract as to every Plaintiff and every Class Member.

## PLAINTIFFS' TOTAL LOSS ACCIDENTS

42.  At all times material hereto, Plaintiff Cody was insured under a policy issued by Allstate Fire.

43.  At all times material hereto, Plaintiff Cody insured a 2016 Volkswagen Touareg Luxury under the policy issued by Allstate Fire.

44.  On or about August 27, 2017, the insured vehicle was involved in an accident, after which Ms. Cody filed a claim for property damage with Allstate, claim number 000472788876h01.

45.  Following the filing of said claim, Allstate determined that the vehicle was a total loss with a base value of $36,193. After condition adjustments, Allstate determined that the vehicle had an Adjusted Vehicle Value of $37,686.00.

46.  The base and adjusted vehicle values were calculated by a third-party vendor ("CCC") who bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage.

47.  Defendant then added sales tax of $2,355.38 and a "DMV fee" of $35.50, and subtracted the deductible of $1,000, for a total of $39,076.88.

48. However, Plaintiff Cody was owed the adjusted vehicle value ($37,686.00), plus sales tax ($2,355.38), plus mandatory fees of (at minimum) $33 for title, $50.75 for registration, $11.50 for Harris county registration, and $21.75 for inspections, minus the $1,000 deductible.

49. Allstate Fire underpaid Plaintiff Cody by paying less in registration fees than what was owed under the Policy. Ms. Cody thus did not receive what she bargained for and what was owed to her due to the total "loss of" her insured vehicle.

50. By not paying the full ACV of the insured vehicle, Allstate Fire breached its contract with Ms. Cody.

51. At all times material hereto, Plaintiff Traevion Love was insured under a policy issued by Allstate County.

52. At all times material hereto, Plaintiff Love insured a 2015 Chrysler 200 Limited under the policy issued by Allstate County.

53. On or about December 20, 2017, Mr. Love's insured vehicle was involved in an accident, after which he filed a claim for property damage with Allstate, claim number 0489056283.

54. Following the filing of said claim, Allstate County determined that the vehicle was a total loss with a base value of $10,484. After condition adjustments, Allstate County determined that the vehicle had an Adjusted Vehicle Value of $11,683.00.

55. The base and adjusted vehicle values were calculated by CCC.

56. Allstate County then added sales tax of $730.19 and a "DMV fee" of $35.50, and subtracted the deductible of $1,000, for a total of $11,448.69.

57. However, Plaintiff Love was owed the adjusted vehicle value and sales tax, plus mandatory fees of (at minimum) $33 for title, $50.75 for registration, county registration fees, and

inspection fees, all of which significantly exceeded the $35.50 paid by Allstate County (indeed, state title fee plus minimum registration fee alone - $83.75 – significantly exceeds the amount paid by Allstate County).

58. Allstate County thus did not pay Mr. Love the full ACV of his insured vehicle.

59. Allstate County underpaid Plaintiff Love by paying less in registration fees than what was owed under the Policy. Ms. Cody thus did not receive what she bargained for and what was owed to her due to the total "loss of" her insured vehicle.

60. Allstate County's underpayment constituted a breach of the insurance contract.

61. At all times material hereto, Plaintiff Burk was insured under a policy issued by Allstate Fire.

62. At all times material hereto, Plaintiff Burk insured a 2009 Nissan Altima SL under the policy issued by Allstate Fire.

63. On or about November 12, 2018, the insured vehicle was involved in an accident, after which Ms. Burk filed a claim for property damage with Allstate, claim number 000524203980H01.

64. Following the filing of said claim, Allstate determined that the vehicle was a total loss with a base value of $4,855.00. After condition adjustments, Allstate determined that the vehicle had an Adjusted Vehicle Value of $3,897.00.

65. The base and adjusted vehicle values were calculated by CCC.

66. Defendant Allstate Fire then subtracted the deductible and salvage-retain value, for a total of $2,436.86.

67. However, Allstate Fire did not include any amount for sales tax, title fees, registration fees, or inspection fees in making the ACV payment to Plaintiff Burk.

68. Allstate Fire underpaid Plaintiff Burk by not paying the sales tax, title fees, registration fees and inspection fees owed under the ACV provision promised in the Policy. Ms. Burk thus did not receive what she bargained for and what was owed to her due to the total "loss of" her insured vehicle.

69. By not paying the full ACV of the insured vehicle, Allstate Fire breached its contract with Ms. Burk.

70.  At all times material hereto, Plaintiff Whitfield was insured under a policy issued by Allstate Fire.

71. At all times material hereto, Plaintiff Whitfield insured a 2011 Buick Enclave CXL under the policy issued by Allstate Fire.

72. On or about August 28, 2017, the insured vehicle was involved in an accident, after which Ms. Whitfield filed a claim for property damage with Allstate Fire, claim number 000472532670h01.

73. Following the filing of said claim, Allstate determined that the vehicle was a total loss with a base value of $16,100.00. Because Allstate did not apply any condition adjustments, the vehicle also was determined to have an Adjusted Vehicle Value of $16,100.00.

74. The base and adjusted vehicle values were calculated by CCC.

75. Defendant Allstate Fire then added sales tax of $1,006.25, a license and transfer fee of $35.50, and subtracted the deductible of $500.00, for a total of $16,641.75.

76. However, Ms. White field was owed mandatory fees of (at minimum) $33 for title, $50.75 for registration, $11.50 for Harris county registration, and $21.75 for inspections.

77. Allstate Fire underpaid Plaintiff Whitfield by not paying the full ACV of the insured vehicle. Ms. Whitfield thus did not receive what she bargained for and what was owed to her due to the total "loss of" her insured vehicle.

78. By not paying the full ACV of the insured vehicle, Allstate Fire breached its contract with Ms. Whitfield.

79. Sales tax, title fees, registration fees, and inspection fees are mandatory applicable costs that must be paid to purchase any vehicle in the State of Texas.

80. No private-passenger replacement vehicle in Texas can be purchased without payment of sales tax and the aforementioned minimum mandatory regulatory fees.

81. Defendants promise to pay the ACV of the insured vehicle in the event of a total loss of the vehicle, which is the adjusted vehicle value of the vehicle, plus sales tax calculated as a percentage (6.25% plus any local surtax) of the adjusted vehicle value, plus title fees, registration fees and inspection fees, minus any applicable deductible and salvage-retained value.

82. Defendants uniformly fail to make such ACV payment to all Texas insureds, including Plaintiffs and every class member.

83. Ms. Burk paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

84. Mr. Love paid all premiums owed and otherwise satisfied all conditions precedent such that his insurance policy was in effect and operational at the time of the accident.

85. Ms. Cody paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

86. Ms. Whitfield paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

87. The aforementioned breach of contract triggers an obligation by Defendants to pay 18% interest on all unpaid amounts paid on the claim under Section 542 of the Texas Insurance Code, plus attorney's fees.

## CLASS ALLEGATIONS

88. Plaintiffs bring this action seeking representation of the below-defined class pursuant to Fed. R. Civ. P. 23.

89. Plaintiffs are members of and seek to represent the following class in making their claim:

> All insureds, under any Texas policy issued by Allstate Fire and Casualty Insurance Company or Allstate County Mutual Insurance Company with the same operative policy language covering a vehicle with auto physical damage coverage, who 1) made a first-party auto property damage claim during the time period of 4 years (or in the alternative, to the extent the policy provides a truncated limitations period, 2 years and one day) prior to the filing of this Complaint to the date on which an Order certifying the class is entered, 2) where such vehicle was declared a total loss, 3) whose claim was adjusted as a total loss, and 4) where the total loss payment was for an amount less than the adjusted vehicle value, plus sales tax calculated as a percentage (6% plus applicable local surtax) of the adjusted vehicle value, plus title fees of $33.00, plus applicable state and county registration fees and inspection fees, less any applicable deductible and salvage-retained value.

90. Plaintiffs are all members of the proposed Class, because each Plaintiff made a claim under a Texas Policy issued by Allstate Fire or Allstate County with the same operative policy language and which included auto physical damage coverage, each Plaintiff made a first-party claim during the relevant time period, each Plaintiff's vehicle was declared to be and adjusted as a total loss, and each Plaintiff received a total-loss payment for less than the adjusted vehicle value, plus sales tax on the adjusted vehicle value, plus title fees of $33.00,

plus applicable state and county registration and inspection fees, less applicable deductible and salvage-retained value.

91. Plaintiffs' claims are typical to those of all Class Members because members of the Class are similarly affected by Defendants' failure to pay the full ACV of the insured vehicles. The material and relevant policy terms for each Class Member are substantially identical to the terms of Plaintiffs' policies.

92. Plaintiffs' claim raises questions of law and fact common to all Class Members, within the meaning of FRCP 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under Defendants' standardized policy language, Plaintiffs and the Class Members are owed full ACV Sales Tax and mandatory replacement fees (title, registration and inspection) upon the total-loss of an insured vehicle; and (b) whether the Defendant has breached its insurance contracts with the Plaintiffs and every member of both classes by failing to pay such amounts.

93. Plaintiffs' claims are typical of the claims of all Class Members because all such claims arise from the allegedly improper failure by Defendant to pay the full ACV Sales Tax and state and local regulatory fees upon the total loss of insured vehicles.

94. Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs do not possess any interest adverse to those of the Class Members.

95. Plaintiffs are committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. The undersigned counsel have litigated thousands of first-party insurance claims under the Texas Insurance Code.

Plaintiffs' counsel also associated other counsel (who intend to apply for admission *pro hac vice*) who have successfully litigated class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

96. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining individual actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

97. The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other Class Members, such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

98. Certification of the above class is also supported by the following considerations:

   a. The relatively small amount of damages that members of the class have suffered on an individual basis would not justify the prosecution of separate lawsuits;
   b. Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and
   c. No difficulties would be encountered in the management of the claim on a class action basis, because the classes are

readily definable and the prosecution of this class action
would reduce the possibility of repetitious litigation.

99. Although the precise number of members of the class are unknown to Plaintiffs at this time
and can only be determined through appropriate discovery, Plaintiffs believe that because
Defendants are part of a large motor vehicle insurer conglomerate in the State of Texas and
write hundreds of millions of dollars of physical damage coverage premiums, the class of
persons affected by Defendants' unlawful practice consists of thousands of individuals or
the class of persons affected are otherwise so numerous that joinder of all class members
is impractical. The unlawful practice alleged herein is a standardized and uniform practice,
employed by Defendants pursuant to standardized insurance policy language, and results
in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs
and the Class Members.  Thus, numerosity is established.

100. Fed. R. Civ. P. 23(a)(2)'s commonality requirement is satisfied for reasons articulated
herein.  The central issues in this litigation turn on interpretation of materially identical
policy provisions; thus, this case is well-suited for class-wide adjudication. Defendants and
all Class Members are bound by materially identical policy terms.  In addition to those
reasons listed above, common questions include (but are not limited to): (1) Whether policy
language ACV includes sales tax and mandatory fees, and (2) whether Defendants are
required to pay sales tax and mandatory fee amounts as alleged herein to insureds who
suffer total-losses to vehicles insured under Defendants' Policy.

101. Fed. R. Civ. P. 23(a)(3)'s typicality requirement is satisfied for reasons articulated herein,
and particularly because Plaintiffs and Class Members were injured through Defendants'
uniform misconduct. Further, Plaintiffs' and Class Members' legal claims arise from the
same core practices, namely, the failure to pay full ACV, including sales tax and mandatory

regulatory fees, for first-party total-loss claims. Plaintiffs' claims are based upon the same legal theories as those of the Class Members. Plaintiffs suffered the same harm as all the other Class Members: the coverage for sales tax and regulatory fees that Defendants failed to pay its insureds.

102. Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. While damages for individual class members may be in unique or different amounts, the measure of damages is the same for all members of Class and for Plaintiffs, the application of which is a purely ministerial matter. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

## CLAIM FOR BREACH OF CONTRACT

103. The allegations contained herein are incorporated by reference.

104. This count is brought by Plaintiffs Andrew Cody, Brittany Burk, Traevion Love, and Dana Whitfield, on behalf of themselves and the Class Members.

105. Plaintiffs were each a party to an insurance contract with one of the Defendants as described herein.  All Class Members were parties to an insurance contract with Allstate Fire or Allstate County containing materially identical terms.

106. The interpretation of Plaintiffs' and all Class Members' insurance Policies is governed by Texas law.

107. Plaintiffs and all Class Members made a claim determined by Defendants to be a first-party total loss under the insurance policy, and determined by Defendants to be a covered claim.

108. Defendants, by paying the total loss claims, determined that Plaintiffs and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

109. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiffs and every Class Member were owed the ACV of the vehicle, which is the adjusted vehicle value, plus sales tax on the adjusted vehicle value, plus title fees of $33.00, plus applicable state and county registration and inspection fees, less applicable deductible and salvage-retained value.

110. Defendants failed to pay the aforementioned amount to Plaintiffs and Defendants failed to pay the aforementioned amount to every Class Member.

111. Defendants' failure to provide coverage for the full ACV Sales Tax and/or full title, registration and inspection fees constitutes a material breach of contract with Plaintiffs and every Class Member.

112. As a result of said breaches, Plaintiffs and the Class Members are entitled under Defendants' insurance policies to sums representing the benefits owed for the full ACV of the insured vehicle, as well as costs, prejudgment and postjudgment interest, injunctive relief and other relief as is appropriate.

113. In addition, Plaintiffs and Class Members are entitled to an award of attorney's fees and costs.

### CLAIM FOR VIOLATION OF PROMPT PAYMENT OF CLAIMS STATUTE

114. Paragraphs 1-102 and 104-113 are hereby incorporated by reference.

115. The failure by Defendants to pay for the losses and/or to follow the statutory time guidelines for paying claims as set forth herein constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

116. Plaintiffs and all other Class Members, therefore, in addition to the claim for damages, are entitled to 18% interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks and prays for relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Class described above, and appointing Plaintiffs as class representatives and the undersigned counsel as Class Counsel;

- For an award of compensatory damages in amounts owed under the Policies;

- For injunctive relief to prevent continuation of this illegal practice and for other injunctive relief as is proven appropriate in this matter;

- For all other damages according to proof;

- 18% interest on all amounts owed under Tex. Ins. Code 542.051 *et seq.*;

- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Tex. Civ. Prac. & Rem. Code § 38.001, and Tex. Ins. Code 542.051 *et seq.*;

- For costs of suit incurred herein;

- For pre and post judgment interests on any amounts awarded;

- For other and further forms of relief as this Court deems just and proper.

Dated August 13, 2019

Respectfully submitted,

By:  */s/ Richard D. Daly*
     Richard D. Daly
     TBN 00796429
     John Scott Black
     TBN 24012292
     DALY & BLACK, P.C.
     2211 Norfolk Street, Suite 800
     Houston, TX  77098
     T:  (713) 655-1405
     F:  (713) 655-1587
     ecfs@dalyblack.com
     rdaly@dalyblack.com
     jblack@dalyblack.com

\* The following firms will be filing motions to be admitted *pro hac vice* promptly after this filing.

Edmund A. Normand, Esq.
FBN: 865590
Jacob L. Phillips, Esq.
FBN: 0120130
NORMAND, PLLC
Post Office Box 1400036
Orlando, FL 32814-0036
T:  (407) 603-6031
F:  (888) 974-2175
firm@ednormand.com
ed@ednormand.com
jacob.phillips@normandpllc.com

Andrew J. Shamis, Esq.
FBN: 101754
SHAMIS & GENTILE, P.A.
14 NE 1 st Avenue, Suite 1205
Miami, FL, 33132
T:  (305) 479-2299
F:  (786) 623-0915
ashamis@shamisgentile.com

Scott Edelsberg, Esq.
FBN: 0100537
EDELSBERG LAW, P.A.
19495 Biscayne Blvd #607
Aventura, FL, 33180
T:  (305) 975-3320
scott@edelsberglaw.com

Christopher J. Lynch, P.A.
FBN 331041
HUNTER & LYNCH
6915 Red Road, Suite 208
Coral Gables, Florida 33143
T:  (305) 443-6200
F:  (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchlaw.com