**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ANDREA CODY, TRAEVION LOVE, BRITTANY BURK and DANA WHITFIELD, individually and on behalf of all others similarly situated, | |
| *Plaintiffs,* | CASE NO. 3:19-cv-1935 |
| v. | CLASS ACTION |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY and ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, | |
| *Defendants.* | |

**DEFENDANTS ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY**
**AND ALLSTATE COUNTY MUTUAL INSURANCE COMPANY'S**
**RULE 12(b)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT**

Roger D. Higgins
Texas Bar Number 09601500
Mark J. Jung
Texas Bar Number 24012934
Elizabeth Lee Thompson
Texas Bar Number 00788290
Ashley B. Pedigo
Texas Bar No. 24095731
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8229
Facsimile: (214) 871-8209
E-mail: rhiggins@thompsoncoe.com
E-mail: mjung@thompconcoe.com
E-mail: lthompson@thompsoncoe.com
E-mail: apedigo@thompsoncoe.com

**Counsel for Defendants Allstate Fire and Casualty Insurance Company and Allstate**
**County Mutual Insurance Company**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ....................................................................................... iii

I. MOTION TO DISMISS ................................................................................ 1

II. PLAINTIFFS' FACTUAL ALLEGATIONS .................................................... 2

III. STANDARDS OF REVIEW AND APPLICABLE LAW ............................. 5

IV. ARGUMENT AND AUTHORITIES ........................................................... 8

      1.    The Policy and Texas Case Law Unambiguously Provide that ACV is Determined by the Market Value of the Automobile Immediately Prior to the Loss and No Texas Law Supports Plaintiffs' Contention that ACV under the Policy Includes Sales Taxes and Fees .............................................................................. 8

      2.    Texas Statutes Further Support that the Actual Cash Value of an Insured Automobile is the Market Value of the Automobile at the Time of the Loss ....................................................................... 13

      3.    The Case Law Plaintiffs Cite Is Distinguishable and Fails to Support Their Contention that Actual Cash Value Is Replacement Cost ........................................................................................ 14

      4.    Under Texas Law, the Fees Plaintiffs Seek Are Not Part of the ACV of a Vehicle ................................................................... 16

      5.    Like Texas, Other Jurisdictions Do Not Consider Sales Tax as Part of the Value of a Vehicle .............................................................. 19

      6.    Plaintiffs' Interpretation Cannot Create Ambiguity Where None Exists ....................................................................................... 20

      7.    Plaintiffs' Breach of Contract and Prompt Payment Causes of Action Should Be Dismissed .................................................... 20

V. CONCLUSION ......................................................................................... 21

CERTIFICATE OF SERVICE ................................................................................... 23

ii

# TABLE OF AUTHORITIES

## Cases

*Am. Mfr. Mut. Ins. Co. v. Schaefer*,
124 S.W.3d 154 (Tex. 2003)........................................................................................ 6, 12

*Amedisys, Inc. v. Kingwood Home Health Care*, *LLC*,
437 S.W.3d 507 (Tex. 2014)............................................................................................ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................... 7

*Carlton v. Trinity Universal Ins. Co.*,
32 S.W.3d 454 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ........................... 12

*Clark v. Clarendon Ins. Co.*,
2002-1314 (La. App. 3 Cir. 3/26/03), 841 So. 2d 1039................................................... 19

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .......................................................................................... 3

*D.C. Hall Co. v. State Highway Comm.*,
330 S.W.2d 904 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.)................................. 18

*Ghoman v. New Hampshire Insurance Co.*,
159 F. Supp. 2d 928 (N.D. Tex. 2001) ............................................................... 11, 14, 15

*Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*,
327 S.W.3d 118 (Tex. 2010).................................................................................... 5, 6, 8

*Great Am. Ins. Co. v. Primo*,
512 S.W.3d 890 (Tex. 2017)............................................................................................ 6

*Guidry v. Bank of LaPlace*,
954 F.2d 278 (5th Cir. 1992) .......................................................................................... 7

*Hishon v. King & Spalding*,
467 U.S. 69 (1984)........................................................................................................... 8

*Int'l Ins. Co. v. Jataine*,
495 S.W.2d 309 (Tex. Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.) ..................... 12

*JAW The Pointe, L.L.C. v. Lexington Ins. Co.*,
    460 S.W.3d 597 (Tex. 2015)......................................................................... 8

*John M. O'Quinn P.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    33 F. Supp. 3d 756 (S.D. Tex. 2014) ......................................................... 6

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
    453 B.R. 645 (N.D. Tex. 2011)................................................................... 3

*Kelley-Coppedge, Inc. v. Highlands Ins. Co.*,
    980 S.W.2d 462 (Tex. 1998)....................................................................... 6

*McCory v. Nw. Mut. Relief Assoc.*,
    66 N.W. 697 (Wisc. 1896) ........................................................................ 12

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. McMurray*,
    342 Fed. Appx. 956 (5th Cir. 2009)....................................................... 6, 10

*Nat'l Union Fire Ins. Co. v. Crocker*,
    246 S.W.3d 603 (Tex. 2008) .................................................................... 20

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*,
    322 F.3d 147 (2nd Cir. 2003)..................................................................... 2

*Papasan v. Allain*,
    478 U.S. 265 (1986)................................................................................... 3

*Puckett v. U.S. Fire Ins. Co.*,
    678 S.W.2d 936 (Tex. 1984)...................................................................... 9

*Queen Ins. Co. v. Dominquez*,
    426 S.W.2d 286 (Tex. Civ. App.—San Antonio 1968), *rev'd on other grounds*,
    *Superior Pontiac Co. v. Queen Ins. Co. of Am*, 434 S.W.2d 340 (Tex. 1968) ............. 2, 10

*Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*,
    150 S.W.3d 423 (Tex. 2004) .................................................................... 21

*Russell v. State*,
    242 S.W.3d 265 (Ark. 2006)..................................................................... 19

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
    509 F.3d 673 (5th Cir. 2007) ..................................................................... 8

*State Farm Life Ins. Co. v. Martinez*,
    216 S.W.3d 799 (Tex. 2007)..................................................................... 21

iv

*State Farm Mut. Auto. Ins. Co. v. Berthelot*,
 98-1011 (La. 4/13/99), 732 So. 2d 1230 .................................................................. 19, 20

*State v. Kluge*,
 672 N.W.2d 506 (Iowa Ct. App. 2003) .............................................................. 19

*Stuyvesant Ins. Co. v. Driskill*,
 244 S.W.2d 291 (Tex. Civ. App.—Fort Worth 1951, no writ) .............................. 2, 10, 11

*Superior Pontiac Co. v. Queen Ins. Co. of Am*,
 434 S.W.2d 340 (Tex. 1968) ................................................................... 2, 10, 11

*Tenaska Frontier Partners, Ltd. v. Sullivan*,
 273 S.W.3d 734 (Tex. App.—Houston [14th Dist.] 2008, no. pet.) ........................... 7, 10

*Tolar v. Allstate Texas Lloyd's Co.*,
 772 F. Supp. 2d 825 (N.D. Tex. 2011) ........................................................... 11, 14, 15

*Tremago, L.P. v. Euler-Hermes Am. Credit Indem. Co.*,
 602 Fed. Appx. 981 (5th Cir. 2015) ................................................................. 20

*Ulico Cas. Co. v. Allied Pilots Ass'n*,
 262 S.W.3d 773 (Tex. 2008) ........................................................................ 12

*Washington Nat'l Ins. Co. v. Craddock*,
 109 S.W.2d 165 (Tex. 1937) ........................................................................ 12

## Statutes

34 Tex. Admin. Code Ann. § 3.62 (West) .............................................................. 13

37 Tex. Admin. Code Ann. § 23.25 (West) ............................................................. 19

37 Tex. Admin. Code Ann. § 23.51 (West) ............................................................. 18

Tex. Ins. Code Ann. ch. 542 (West) .................................................................... 20

Tex. Tax Code Ann. § 152.002 (West) .................................................................. 13

Tex. Transp. Code Ann. § 501.022 (West) ........................................................ 16, 17

Tex. Transp. Code Ann. § 501.091 (West) .............................................................. 13

Tex. Transp. Code Ann. § 501.138 (West) .............................................................. 16

TEX. TRANSP. CODE ANN. § 502.040 (West)..................................................................... 17

## Rules

FED. R. CIV. P. 12(b)(6)......................................................................................... 2, 7, 12

FED. R. CIV. P. 8(a)(2) ................................................................................................ 7

## Other Authorities

12 Couch on Ins. § 175.24 (3d ed. 2019)...................................................................... 11

2 Casualty Ins. Claims § 25.25 (4th ed., 2019)............................................................. 11

Texas Dept. Ins. Comm'r Bulletin #B-0068-08 (2008)........................................... 15, 16

Defendants Allstate Fire and Casualty Insurance Company ("Allstate Fire") and Allstate County Mutual Insurance Company ("Allstate County") (collectively, "Defendants" or "Allstate") move the Court to dismiss with prejudice in its entirety the Class Action Complaint for Damages filed by Plaintiffs Andrea Cody, Traevion Love, Brittany Burk, and Dana Whitfield (collectively, "Plaintiffs"), and in support thereof respectfully show as follows:

## I. MOTION TO DISMISS

Plaintiffs in this putative class action seek to rewrite their Texas Personal Automobile Policy ("Policy") and impose obligations contrary to the clear language of their Policy and Texas law.[1] Plaintiffs' Policy only requires payment of actual cash value in the event of a total loss and no more. Plaintiffs' suit nevertheless seeks to add an obligation to pay sales tax and fees over and above actual cash value of the automobile. These additional obligations are nowhere reflected in the Policy and are not supported by the plain, ordinary meaning of the Policy, Texas case law, or Texas statutory law, including the Texas Tax Code and Texas Transportation Code.

Plaintiffs' Policy states that the limit of liability is "the actual cash value of the property at the time of the loss."  Plaintiffs' Complaint ¶ 19.  Plaintiffs' entire suit is based on their assertion that Allstate breached its Policy contract with Plaintiffs "by uniformly underpaying (or not paying at all) sales tax, title fees, registration fees, and inspection fees[.]"[2] Plaintiffs' Complaint ¶ 40; *see* Plaintiffs' Complaint ¶ 111.  Plaintiffs' contentions fail.  The Policy terms,

---

[1] As Plaintiffs state in their Complaint, Allstate "utilize[s] the same standard and uniform policies containing the same policy language" in the policies at issue. Plaintiffs' Complaint ¶ 15.  As a result, as Plaintiffs do in their Complaint, this Motion refers to the policies as the "Policy."  *See* Plaintiffs' Complaint ¶ 15.

[2] Plaintiffs argue that "the ACV of the vehicle" "is the adjusted vehicle value, plus sales tax on the adjusted vehicle value, plus title fees of $33.00, plus applicable state and county registration and inspection fees, less applicable deductible and salvage-retained value."  Plaintiffs' Complaint ¶ 109.

Texas statutes, and case law confirm the clear meaning of actual cash value that applies: the actual cash value is the reasonable cash market value of the car immediately prior to the loss. *See* Plaintiffs' Policy p. 14; Exhibits A–D.[3]

Plaintiffs appear to advocate for a definition of actual cash value contrary to the Policy and statutory and case law. Indeed, Plaintiffs would argue that in the event of a total loss, actual cash value is calculated by taking the replacement cost less depreciation. Plaintiffs' Complaint ¶ 25. This argument is at odds with the terms of the Policy and Texas law and wrongfully conflates real property claims with auto claims. Rather, the operative Policy requires Allstate to pay the actual cash value or market value in the event of a total loss.

Clearly, neither of the claims that Plaintiffs assert are viable.  According to the plain, ordinary, and unambiguous meaning of the Policy under Texas law, Allstate has not breached the Policy contract for failing to pay sales tax and fees.  Consequently, Allstate has not violated the prompt payment of claims statute.  As a result, Plaintiffs fail to state a claim upon which relief can be granted and their claims should be dismissed.  *See* FED. R. CIV. P. 12(b)(6).

## II. PLAINTIFFS' FACTUAL ALLEGATIONS

For the purposes of this Motion, Plaintiffs' Complaint is based on the following allegations:[4]

---

[3] *See Queen Ins. Co. v. Dominquez*, 426 S.W.2d 286, 288 (Tex. Civ. App.—San Antonio 1968), *rev'd on other grounds*, *Superior Pontiac Co. v. Queen Ins. Co. of Am*, 434 S.W.2d 340 (Tex. 1968); *Stuyvesant Ins. Co. v. Driskill*, 244 S.W.2d 291, 292–93 (Tex. Civ. App.—Fort Worth 1951, no writ).

[4] Allstate's 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of Plaintiffs' pleadings.  As such, this Court is tasked only with assessing the legal feasibility of Plaintiffs' pleadings.  *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2nd Cir. 2003). Reference to Plaintiffs' pleadings herein and the attached exhibits is relevant solely to Allstate's legal challenge to Plaintiffs' allegations and is not a proffer of extrinsic evidence.

Plaintiff Andrea Cody purchased a Renewal Texas Personal Auto Policy, Policy No. 829737708, from Allstate Fire and Casualty Insurance Company with an effective date of July 9, 2017. *See* Plaintiff Cody's policy attached as Exhibit A to this Motion. Plaintiff Traevion Love purchased a Texas Personal Auto Policy, Policy No. 838860956, from Allstate County Mutual Insurance Company with an effective date of November 8, 2017. *See* Plaintiff Love's policy attached as Exhibit B to this Motion. Plaintiff Johnny Barton purchased a Renewal Texas Personal Auto Policy, Policy No. 838813045, from Allstate Fire and Casualty Insurance Company with an effective date of October 17, 2018. Brittany Burk is listed as an insured driver on Barton's policy. *See* Plaintiff Barton's policy attached as Exhibit C to this Motion. Plaintiff Dana Whitfield purchased a Renewal Texas Personal Auto Policy, Policy No. 816012742, from Allstate Fire and Casualty Insurance Company with an effective date of June 22, 2017. *See* Plaintiff Whitfield's policy attached as Exhibit D to this Motion.[5] The relevant portions of Plaintiffs' Policy (Exhibits A, B, C and D to this Motion) are analogous for the purposes of the Motion.

The Policy limits recovery for loss to a covered automobile to the "actual cash value of the property or damaged part of the property at the time of loss…" (Plaintiffs Cody, Burk and Whitfield's Policy, Texas Personal Auto Policy—Amendatory Endorsement – AU14573-1;

---

[5] A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b) accepts all facts as well-pleaded, but it does not admit legal conclusions or the truth or accuracy of opinions stated in pleadings. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, the factual background in this section recites the allegations in the Complaint and exhibits attached thereto. Allstate does not admit such allegations, but merely summarizes the facts as alleged solely for purposes of this Motion. Additionally, Plaintiffs quote the policies, which are central to Plaintiffs' claims and the authenticity of the policies is not disputed. Accordingly, the Court may consider the policies without converting this motion to dismiss into a motion for summary judgement. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000); *see also Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 661–62 (N.D. Tex. 2011).

Exhibits A, C and D) or "[a]ctual cash value of the stolen or damaged property."  Plaintiff Love's Policy, Texas Personal Auto Policy—Amendatory Endorsement – AU2252-9; Exhibit B.

Plaintiff Cody owned a 2016 Volkswagen Touareg, insured by the auto policy issued by Allstate. On or about August 27, 2017, Plaintiff Cody's vehicle was damaged due to a storm event. Plaintiff Cody subsequently filed a claim for property damages with Allstate, claim number 0472788876 CAT.

Allstate deemed the vehicle a "total loss" and calculated that the base value of the vehicle was $36,193 using a CCC Market Valuation Report. *See* Plaintiffs' Complaint ¶¶ 45-46. After taking into account the applicable conditions adjustment, sales tax, and a registration fee, the adjusted amount of Plaintiff Cody's vehicle was increased to $40,076.88. *Id*. at ¶ 47.

Plaintiff Love owned a 2015 Chrysler 200, insured by the auto policy issued by Allstate. On or about December 20, 2017, Plaintiff Love was involved in an accident while operating this vehicle. Plaintiff Love subsequently filed a claim for property damages with Allstate, claim number 0489056283.

Allstate deemed the vehicle a "total loss" and calculated that the base value of the vehicle was $10,484 using a CCC Market Valuation Report. *See* Plaintiffs' Complaint ¶¶ 54-55. After taking into account the applicable conditions adjustment, sales tax, and a registration fee, the adjusted amount of the vehicle was increased to $12,448.69. *Id*. at ¶ 57.

Plaintiff Burk owned a 2009 Nissan Altima, insured by the auto policy issued by Allstate. On or about November 12, 2018, Plaintiff Burk's vehicle suffered water-related damage. Plaintiff Cooper subsequently filed a claim for property damages with Allstate, claim number 0524203980.

Allstate deemed the vehicle a "total loss" and calculated that the base value of the vehicle was $$4,855 using a CCC Market Valuation Report. See Plaintiffs' Complaint ¶¶ 64-65. After taking into account the applicable conditions adjustment, the adjusted amount of the vehicle was $3,897. *Id*. at ¶ 66.

Plaintiff Whitfield owned a 2011 Buick Enclave, insured by the auto policy issued by Allstate. On or about August 28, 2017, Plaintiff Whitfield's vehicle was damaged due to a storm event. Plaintiff Whitfield subsequently filed a claim for property damages with Allstate, claim number 0472532670.

Allstate deemed the vehicle a "total loss" and calculated that the base value of the vehicle was $16,100 using a CCC Market Valuation Report. See Plaintiffs' Complaint ¶¶ 73-74. After taking into account the applicable conditions adjustment, sales tax, and a license and transfer fee, the adjusted amount of the vehicle was increased to $17,141. *Id*. at ¶ 75.

On August 13, 2019, Plaintiffs filed their Class Action Complaint in the Northern District of Texas, Dallas Division alleging claims for breach of contract and violation of the prompt payment of claims statute. Plaintiffs do not challenge that actual cash value is the basis for loss adjustment. They do not contend that their automobiles were repairable or that Allstate was obligated to repair the automobiles or purchase replacement vehicles. Plaintiffs base the entirety of their claims on the contention that Allstate breached the Policy by paying actual cash value without including sales tax and certain fees as part of the actual cash value payment.

### III. STANDARDS OF REVIEW AND APPLICABLE LAW

Courts applying Texas case law interpret insurance policies according to the same rules of construction as all other contracts. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). When construing a contract, the primary concern is to ascertain the intentions of the parties as expressed in the document. *Amedisys, Inc. v.*

*Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2014). The language of the contract is the best representation of what the parties mutually intended. *Gilbert*, 327 S.W.3d at 126. If policy language is unambiguous, the language will be interpreted according to its plain meaning. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) ("If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we will construe it as a matter of law."). Whether a policy is ambiguous is itself a question of law. *Id.* at 157. An insurance contract is unambiguous and enforceable as written if it is worded such that it "can be given a definite or certain legal meaning." *John M. O'Quinn P.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 33 F. Supp. 3d 756, 764 (S.D. Tex. 2014). "Only if an insurance contract is susceptible to multiple reasonable interpretations must a court adopt the interpretation most favorable to the insured." *Id.* "[A] court will not find a contract ambiguous merely because the parties offer contradictory interpretations." *Id.* ("A Court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings."); *see Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998) (no ambiguity "merely because the parties advance conflicting contract interpretations"); *see also Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("We…refuse to insert language or provisions the parties did not use or to otherwise rewrite private agreements.").

Under Texas law, "undefined terms are not *per se* ambiguous." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. McMurray*, 342 Fed. Appx. 956, 959 (5th Cir. 2009). "Undefined policy terms are given their plain, ordinary meaning, if such a meaning can with some clarity be determined." *Id.* A court "properly look[s] to Texas common law to seek the ordinary meaning of these undefined terms." *Id.* (citing *Tenaska Frontier Partners, Ltd. v. Sullivan*, 273 S.W.3d

734, 737 (Tex. App.—Houston [14th Dist.] 2008, no. pet.) ("In determining the ordinary meaning of an undefined term, Texas courts have consulted the term's common-law usage, interpretation when used in other statutes, and definitions in secondary sources.")).

To survive a Rule 12 motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a)(2) by stating "a short and plain statement of the claim showing that the pleader is entitled to relief" that gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see* FED. R. CIV. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of a complaint that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under this standard, a plaintiff is required to plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570 (2007).

Although a court must assume the truth of well-plead factual allegations for purposes of Rule 12(b)(6), this assumption does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). And, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Therefore "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. To avoid dismissal, the complaint must plead sufficient facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Where it appears beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief,

dismissal is appropriate. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Based upon these standards, Plaintiffs failed to plead facts sufficient to state a claim plausibly on its face. Plaintiffs' Complaint does not state any claim against Allstate upon which relief can be granted. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 676 (5th Cir. 2007) (affirming dismissal of breach of contract claim where there was "no indication that State Farm failed to honor" its "contractual obligation" under its policy where "no policy language describing State Farm's duty to conduct or pay for automobile inspections").

## IV. ARGUMENT AND AUTHORITIES

Plaintiffs' assertions that Allstate breached Plaintiffs' Policy because Allstate "fail[ed] to pay the full ACV of the total-loss vehicle" by not paying sales tax and various fees clearly fails to state a claim on which relief can be granted because (1) the Policy and Texas law clearly dictate that the "actual cash value" ("ACV") of a total loss vehicle under the Policy is the market value of the vehicle immediately prior to the time of loss and (2) under the Policy's terms and Texas law, sales tax and the sought fees are not included in the calculation. *See* Plaintiffs' Complaint ¶ 4.

**1.    The Policy and Texas Case Law Unambiguously Provide that ACV is Determined by the Market Value of the Automobile Immediately Prior to the Loss and No Texas Law Supports Plaintiffs' Contention that ACV under the Policy Includes Sales Taxes and Fees**

Texas courts have long construed insurance policies according to the general rules of contract construction to ascertain the parties' intent. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015); *Gilbert*, 327 S.W.3d at 126. Courts look at the language of the policy because it assumes the parties intended what the words of their contract say. *Gilbert*, 327 S.W.3d at 126. And, if an insurance policy provision is clear and unambiguous, then it must be enforced according to its terms. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936,

938 (Tex. 1984).

The Policy's "Limits of Liability" section circumscribes Allstate's obligation to compensate Plaintiffs for a loss.   In pertinent part, Plaintiffs' Cody, Burk, and Whitfield's Policy states:

### Part D—Coverage For Damage To Your Auto

* * *

I.  In **Part D—Coverage For Damage To Your Auto, the Limits Of Liability** provision is replaced by the following:

**Limits Of Liability**
Our limit of liability is the least of:

1.  The actual cash value of the property or damaged part of the property at the time of loss; or

2.  The cost to repair or replace the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations; or

3.  The limit of liability shown on the Declarations applicable to the damaged property.

Any applicable deductible amount is then subtracted.

* * *

Plaintiffs Cody, Burk and Whitfield's Policy, Texas Personal Auto Policy—Amendatory Endorsement – AU14573-1; Exhibits A, C and D.

It in pertinent, part Plaintiff Traevion Love's Policy states:

### Part D—Coverage For Damage To Your Auto

* * *

IV.  In **Part D. Coverage For Damage To Your Auto**, the following changes are made:

A.     **The Limit Of Liability** provision is replaced by the following:

**Limit Of Liability**
Our limit of liability for loss will be the lesser of the:

1.     Actual cash value of the stolen or damaged property;

2.     Amount necessary to repair or replace the property with other of like kind and quality; or

3.     Limit of liability shown on the Declarations applicable to the damaged property.

\* \* \*

Plaintiff Love's Policy, Texas Personal Auto Policy—Amendatory Endorsement – AU2252-9; Exhibit B.

Under the terms of the Policy, the amount of recovery for a total loss is the ACV of the property at the time of the damage.  Because the Policy does not define ACV, under Texas law, a court looks to the common law, statutes, and definitions in secondary sources to determine the meaning of ACV.  *See Nat'l Union*, 342 Fed. Appx. at 959 (concluding "undefined terms are not *per se* ambiguous" and  "[u]ndefined policy terms are given their plain, ordinary meaning, if such a meaning can with some clarity be determined"); *Tenaska*, 273 S.W.3d at 737.

Plaintiffs allege that "ACV includes costs reasonably likely to be incurred in property replacement" and that actual cash value means repair or replacement cost less depreciation. Plaintiffs' Complaint ¶ 25. But Texas law dictates otherwise.

Under clear Texas law, "[i]f there has been a total loss of [an] automobile, the measure of damages is the reasonable cash market value of the car immediately before the theft." *Dominquez*, 426 S.W.2d at 288; *see Stuyvesant*, 244 S.W.2d at 292–93 (amount insurer obligated to pay for total loss automobile was "actual cash value of the automobile as of the time it was

stolen" which was "cash market value of the automobile"); *see also* 2 Casualty Ins. Claims § 25.25 (4th ed., 2019) (for automobile claims, "ACV in the event of a total loss has been referred to as 'fair market value,' especially for reasonably similar items"); 12 Couch on Ins. § 175.24 (3d ed. 2019) (where a policy does not specifically define ACV, "there is a priority of rules to determine actual cash value as follows, (1) where market value is easily determined, actual cash value is market value").

Further and significantly, Texas authorities define "market value" for purposes of the ACV of a total-loss automobile to be "the *reasonable cash market value* of the automobile immediately prior to its" damage. *Superior Pontiac*, 434 S.W.2d at 342 (emphasis added); *see Stuyvesant*, 244 S.W.2d at 292–93 (damages recoverable for total loss were "$2100 for the cash market value of the automobile" immediately prior to the loss). No Texas authority considers sales tax and fees that Plaintiffs seek in this case as components of the ACV of a total-loss vehicle (which is the "reasonable cash market value" of a total loss automobile "immediately prior" to the damage). *See* Plaintiffs' Complaint (citing no authorities supporting inclusion of such taxes and fees in ACV of total-loss vehicle and only citing distinguishable authorities concerning real property (pp. 5–6 (*Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001) (concerning ACV of real property); *Tolar v. Allstate Tex. Lloyd's Co.*, 772 F. Supp. 2d 825 (N.D. Tex. 2011) (concerning ACV of real property)).

Plaintiffs state the inconsistent positions that (1) "[t]he Policy language does not further define ACV as including: . . . any provision excluding sales tax or state and local regulatory fees from ACV" and (2) the "Policy unambiguously provides coverage for sales tax and mandatory fees as elements of the promised ACV payment for total-loss insured vehicles."

Plaintiffs' Complaint ¶¶ 22, 28 (citing no Policy provisions to support these propositions).[6] No

terms of the Policy "unambiguously provide[]" for payment of sales tax and fees as part of the

ACV of a total-loss vehicle—and Plaintiff does not point to Policy term that supports inclusion

of such taxes and fees in ACV.[7]

Under Texas law, where the policy language limiting liability is unambiguous—as the

Policy language is here—courts will not impose additional contractual requirements or expand

coverage beyond what the insurance policy states. *See Am. Mfr. Mut. Ins. Co. v. Schaefer*, 124

S.W.3d 154, 158–59 (Tex. 2003) (concluding that insurer's obligation to compensate "loss is

circumscribed by the policy's 'Limit of Liability section'"); *Carlton v. Trinity Universal Ins.

Co.*, 32 S.W.3d 454, 465 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (although

insured argued that the court should award "inherent diminished value" of automobile, the court

concluded "the role of the court is to interpret the meaning of the insurance agreement" not to

"promulgate the terms of the policy or to modify the coverage it provides").

Accordingly, neither the Policy nor Texas law support Plaintiffs' argument that ACV for

---

[6] *See* Plaintiffs' Complaint ¶ 35 (alleging "Allstate's Policy promising to pay such taxes and fees in the event of a total loss").

[7] Further, although Allstate—as a business policy but not legal requirement—paid some Plaintiffs sales tax as well as certain fees in addition to ACV of their total loss vehicle, the Policy and Texas law impose no obligation to provide such coverage. Allstate's payment of these additional costs is not relevant for the purposes of this Motion to Dismiss because payment alone does not create coverage where none exists. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 787 (Tex. 2008) (stating neither waiver or estoppel "could effect a chance in the policy's coverage"); *Washington Nat'l Ins. Co. v. Craddock*, 109 S.W.2d 165 (Tex. 1937) (though insurance company's conduct is "in conflict with the terms of the contract of insurance and with the knowledge of the insured, and relied upon by him," the conduct "will not have the effect to broaden out such contract so as to cover additional objects of insurance or causes of loss" (quoting *McCory v. Nw. Mut. Relief Assoc.*, 66 N.W. 697, 699 (Wisc. 1896)); *see Int'l Ins. Co. v. Jataine*, 495 S.W.2d 309, 316 (Tex. Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.) ("A person may not create coverage by relying upon the doctrine of waiver when he is not otherwise insured under the policy."). Under the Policy terms and Texas law, Plaintiffs have failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

Plaintiffs' total-loss automobiles includes sales tax and fees.  As a result, Plaintiffs' contention that Allstate breached the Policy by failing to pay Plaintiffs sales tax and fees over and above the ACV of their total-loss automobiles fails to state a claim.  Allstate paid Plaintiffs the actual cash value—which was the cash market value of their total-loss vehicle immediately prior to the loss—in accordance with the Policy's straightforward terms and clear Texas law.

## 2.      Texas Statutes Further Support that the Actual Cash Value of an Insured Automobile is the Market Value of the Automobile at the Time of the Loss

Both the Texas Transportation Code and the Texas Tax Code clearly support Allstate's calculation of actual cash value.  The Texas Transportation Code states: "'[a]ctual cash value' means the market value of a motor vehicle."  TEX. TRANSP. CODE ANN. § 501.091 (West). Likewise, the Texas Tax Code defines "[t]otal consideration" for the purposes of assessing sales tax as "the amount paid or to be paid for a motor vehicle and its accessories attached on or before the sale[.]" TEX. TAX CODE ANN. § 152.002 (West).  The Tax Code further specifies that tax is over and above the consideration paid for a vehicle and is not part of a value.  *Id*. These are consistent with the Texas Pattern Jury Charge (Negligence) § 31.3 ("Market value means the amount that would be paid in cash by a willing buyer who desires to buy but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling").

There is no Texas statute or regulation requiring payment of sales tax or title, registration, inspection, or emission fees when an auto insurance carrier pays actual cash value in a total loss situation. The Texas Administrative Code does not impose a sales tax liability on an insurer taking salvage title with payment of actual cash value. Rather, it only requires insurers to pay sales tax to the state when they purchase a replacement vehicle for an insurer (just as any non-exempt purchaser of a vehicle must pay).  *See* 34 TEX. ADMIN. CODE  ANN. § 3.62 (West).  Here, however, there is no allegation that Allstate purchased any replacement vehicle or was under any

obligation to do so. Instead it is clear from the pleadings that it paid actual cash value as was its right under the Policy. Obviously, the terms actual cash value and market value have a definite and certain legal meaning under Texas law—and Defendant's calculation of actual cash value comports with that legal meaning as stated in Texas statutes.

Yet, notwithstanding these statutory definitions for the market value and consideration for automobiles, Plaintiffs assert that "ACV includes costs reasonably likely to be incurred in property replacement" and thus includes "an obligation to pay sales tax" along with "title fees, registration fees, safety inspection fees and emissions inspection fees." Plaintiffs' Complaint ¶¶ 24–25. The Policy, case law, and statutory definitions of market value of automobiles demonstrate that Plaintiffs' definition—founded on the inapt concept of replacement cost minus depreciation—is inapplicable for a covered automobile in Texas. As a result, Plaintiffs' claims lack merit and should be dismissed.

### 3. The Case Law Plaintiffs Cite Is Distinguishable and Fails to Support Their Contention that Actual Cash Value Is Replacement Cost

Plaintiffs cite two cases in an attempt to support their argument that actual cash value means replacement cost less depreciation. They do so by linking isolated statements without regard to the context of each case and policies at issue. In fact, these cases simply do not apply.

The two cases cited by Plaintiffs—*Ghoman v. New Hampshire Insurance Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001) and *Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp. 2d 825, 828, 831 (N.D. Tex. 2011)—involved policies that provided for the cost to "repair or replace" in the context of repairs to real property. No one suggests, in this case, that the Policy involves calculation of the value of repairs and depreciation based on these repairs.

Plaintiffs cite *Ghoman*, 159 F. Supp. 2d at 934, as authority for the proposition that "[a]ctual cash value is market value and 'means the cost of replacement minus depreciation.'"

Plaintiffs' Complaint ¶ 25. As a threshold matter, *Ghoman* concerned actual cash value of repairs of real property damage in connection with a commercial property insurance policy on a hotel—which is distinguishable from this case, which involves the actual cash value of an insured automobile that is unrepaired and deemed a "total loss." *See id.* at 930, 933. The *Ghoman* case is also distinguishable because, unlike the Policy at issue in this lawsuit, the policy in *Ghoman* was a replacement cost policy. 159 F. Supp. 2d at 934. The court addressed the two-step process for paying claims for repairs under the language of that policy. That case did not involve the loss of a vehicle.  The facts of *Ghoman* are clearly distinguishable and Plaintiffs' attempt to import an actual cash value definition based on "replacement cost less depreciation" is based on clearly inapplicable case law.

Likewise, *Tolar*, 772 F. Supp. 2d at 828, 831, is also inapplicable, as it concerns the calculation of actual cash value for claims for repairs to a structure under a homeowner's insurance policy. As highlighted in *Ghoman*, real property policies employ a different approach in calculating actual cash value than automobile policies. In addition, in *Tolar*, the parties agreed in the context of the insurance policy and facts at issue that the actual cash value of repairs was to be determined by "the amount it would take to repair or replace damage to your home less depreciation." 772 F. Supp. 2d at 829. As such, *Tolar* did not address the meaning of actual cash value.

Further, Plaintiffs cite an inapplicable Texas Department of Insurance Commissioner Bulletin that concerns "the standard method for determining actual cash value of a *structure*" "under replacement cost policies." Texas Dept. Ins. Comm'r Bulletin #B-0068-08 (2008) (emphasis added). The bulletin concludes it "is the *replacement cost with proper deduction for*

*depreciation*." *Id.* (emphasis added). The Policy here is not a replacement cost policy and this case does not involve actual cash value of a structure.

Simply put, unlike Plaintiffs' cited cases and the insurance bulletin, this case does not involve repairs to real property under a policy insuring real property. Plaintiffs' claims are automobile total loss claims, which under their Policy are decided on an actual cash value basis or market value—not the cost to replace or repair the damaged vehicle less depreciation.

**4.      Under Texas Law, the Fees Plaintiffs Seek Are Not Part of the ACV of a Vehicle**

In addition, Plaintiffs' arguments regarding the imposition of certain "mandatory fees" to be included in Allstate's "promised ACV payment" are inaccurate.  Plaintiffs' Complaint ¶ 28. Plaintiff pleads for title fees, registration fees, safety inspection fees, and emissions inspection fees.  Motion p. 2.  None of these fees are part of the ACV of a vehicle under Texas law.

First, Plaintiffs erroneously cite to "Tex. Stat. §501.138(1)" for the proposition that "Texas law imposes a mandatory title fee of $33.00 *on the purchase of any vehicle, including, necessarily, the purchased replacement of a total loss vehicle*."  Plaintiffs' Complaint ¶ 29. (emphasis added.) Plaintiffs appear to be referring to Tex. Transp. Code §501.138(1), which states that an applicant for a title must pay this $33 fee, which is to be distributed among various governmental funds and accounts.  However, this statute only refers to payment of the $33 fee upon application for title. Section 501.138(1) is completely silent on the issues of vehicle valuation, purchase, or the "purchased replacement of a total loss vehicle." *Id.* Plaintiffs' citation to this statute has no bearing on Allstate's payment duties under the policy.

Next, Plaintiffs further erroneously cite to "Tex. Stat. §501.022" in support of a conclusory statement that "[I]n fact, in Texas, it is illegal to drive a vehicle on the road absent proper certification of title for which the $33.00 fee is imposed." *See* Plaintiffs' Complaint ¶¶ 29-30.  Plaintiffs appear to be referring to Tex. Transp. Code §501.022.  Under this statute, an

owner of a motor vehicle may not operate or permit the operation of a vehicle on a public highway until the owner applies for title and registration for the vehicle or obtains a receipt evidencing title for registration purposes only under §501.029. *See* TEX. TRANSP. CODE ANN. § 501.022(a) (West). A "person may not operate a motor vehicle registered in this state on a public highway if the person knows or has reason to believe that the owner has not *applied* for a title for the vehicle. *See* TEX. TRANSP. CODE ANN. § 501.022(a) (West) (emphasis added.) The statute then makes clear that vehicle title must be obtained before selling or disposing of the vehicle. Plaintiffs' paraphrasing of this statute in the context of ACV is wholly misapplied. Section 501.022 is silent on the issues of vehicle valuation, purchase, or the "purchased replacement of a total loss vehicle." Plaintiffs' Complaint ¶ 29. Plaintiffs' citation to this statute has no bearing on Allstate's payment duties under the Policy.

Plaintiffs then assert that "Texas law makes it illegal to drive a vehicle without proper registration or tag." *See* Plaintiffs' Complaint ¶31. However, Plaintiffs do not cite to any statute or other legal source for this statement. In fact, the Texas Transportation Code addresses a broad range of rules and requirements pertaining to vehicle registration issues which have nothing to do with vehicle valuation. By way of example, Texas Transportation Code §501.003 makes clear that the Certificate of Title Act is intended to lessen and prevent theft of motor vehicles, importation into Texas of stolen vehicles, and sales of encumbered vehicles without disclosure of lien. To this end, not more than 30 days after purchasing a vehicle or becoming a Texas resident, the owner of a motor vehicle, trailer, or semitrailer shall apply for the vehicle's registration. *See* TEX. TRANSP. CODE ANN. § 502.040(a) (West). The application must be accompanied by personal identification. *Id.* at § 502.040(b). The presentation of such personal identification with the application serves the stated statutory purpose of ensuring that the vehicle is registered to the

rightful owner.   Nothing about this process bears on the vehicle's ACV. Moreover, specified license fees are imposed by statute for the registration of the various types of motor vehicles and trailers that are used on the public highways and roads of Texas. Pursuant to Texas law, the payment of registration fees required of motor vehicles operated over the public highways is a privilege tax in the nature of a license or toll for the use of Texas' public highways. *D.C. Hall Co. v. State Highway Comm.*, 330 S.W.2d 904, 909 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.). The value of the motor vehicles using the public highways is not a consideration in the application of this type of fee.

Plaintiffs also assert that "[e]very vehicle in Texas must pass a yearly inspection (which must be proved prior to registration) for safety and, in some counties, for emissions." Plaintiffs' Complaint ¶32.  Again, Plaintiffs do not cite to any statute or other legal source for this global proposition.  This statement, which is inaccurate on its face due to certain exceptions that could apply, does not bear on Allstate's payment duties under the Policy. The statutes governing vehicle inspection requirements are found at 37 TAC Chapter 23, *et seq.* Every vehicle in Texas does not need to pass a yearly inspection as Plaintiffs contend.  This process is applicable only to designated vehicles; in fact, there are exceptions to such designation that Plaintiffs ignore perhaps because this distinction would only underscore that safety and/or emissions testing is not uniformly applicable to a class. All designated vehicles must be emissions tested at the time of and as a part of the designated vehicle's annual vehicle safety inspection at a vehicle inspection station certified by the department to perform vehicle emissions testing, subject to exceptions.  *See* 37 TEX. ADMIN. CODE ANN. § 23.51(c) (West).[8] The vehicle inspected fee is, by

---

[8] Pursuant to law, any vehicle not listed as an exempt vehicle that is capable of being powered by gasoline, from two to twenty-four years old, presented for the annual vehicle safety inspection in

statute, a "charge for performing the vehicle inspection only," having nothing to do with the value of the vehicle being inspected. *See* 37 TEX. ADMIN. CODE ANN. § 23.25(a) (West). As a result, Plaintiffs' assertion of an entitlement to inspection fees as part of the ACV payment is not supported under Texas law.

Based on the foregoing, it is evident that Plaintiffs assert unsubstantiated contentions that the "mandatory fees" are part of ACV. Clearly, under Texas law, the sought "mandatory fees" are not components of Allstate's ACV payment obligations under the Policy.

**5.      Like Texas, Other Jurisdictions Do Not Consider Sales Tax as Part of the Value of a Vehicle**

As noted, there is no requirement under Texas law for an insurer to pay sales tax or fees when calculating the actual cash value of a total loss vehicle. Rather, sales tax is an excise tax on a transaction and not a component of the value of a vehicle. As further support for Allstate's position, case authorities from other jurisdictions hold that sales tax is not part of the value of vehicles and other property. *See Berthelot*, 732 So. 2d at 1235 (for vehicle valuation, sales tax is a mandatory cost which state and local governments have added to the sale transaction, over and above the value of the purchased property); *Clark v. Clarendon Ins. Co.*, 2002-1314 (La. App. 3 Cir. 3/26/03), 841 So. 2d 1039, 1046 ("[W]e conclude that the 'actual cash value' of Mr. Clark's truck and property when it was stolen and/or damaged did not include sales tax"); *see also Russell v. State*, 242 S.W.3d 265, 271 (Ark. 2006) (theft case concluding, "Clearly, the sales tax is a cost imposed on the transaction. It does not in any way increase or enhance the 'value' of the property."); *State v. Kluge*, 672 N.W.2d 506, 509 (Iowa Ct. App. 2003) (considering value of stolen property and concluding "it appears a sales tax is not truly a component of the value of a

---

affected counties will be presumed to be a designated vehicle and will be emissions tested as a part of the annual vehicle safety inspection. *See* 37 TEX. ADMIN. CODE ANN. § 23.51(e) (West).

good or service, but rather a separate amount collected by a retailer for the benefit of a governmental taxing authority").

6.      **Plaintiffs' Interpretation Cannot Create Ambiguity Where None Exists**

Plaintiffs assert that the "Policy unambiguously provides coverage for sales tax and mandatory fees as elements of the promised ACV payment for total-loss insured vehicles. Alternatively, coverage for sales tax and mandatory transfer fees is a reasonable interpretation of an ambiguous term, and thus the policy should be construed to provide such coverage." Plaintiffs' Complaint ¶ 28. However, Plaintiffs' gratuitous additional language cannot create ambiguity where none exists. *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008) ("Most importantly, we must give the policy's words their plain meaning, without inserting additional provisions into the contract.").

Additionally, Plaintiffs' disjointed actual cash value theory serves no purpose other than to confuse calculation of actual cash value of repairs to real property with calculation of actual cash value of an automobile. Likening a building structure to an automobile is further refuted by popularly available guidebooks such as N.A.D.A. Official Used Car Guide, which provides examples of vehicle values without reference to sales tax. *State Farm Mut. Auto. Ins. Co. v. Berthelot*, 98-1011 (La. 4/13/99), 732 So. 2d 1230, 1235.

7.      **Plaintiffs' Breach of Contract and Prompt Payment Causes of Action Should Be Dismissed**

Plaintiffs' claims for sales tax and title fees, registration fees, safety inspection fees, and emission inspection fees have no support based the terms of the Policy or statutory or case law. Consequently, Plaintiffs have failed to state a claim for either of their two causes of action: Allstate has not breached the Policy contract with Plaintiffs and, because Allstate has not breached the contract, Allstate has also not violated the prompt payment of claims statute as the

amounts they are claiming as unpaid for taxes and fees are not owed under the Policy. *See* TEX. INS. CODE ANN. ch. 542 (West); *see Tremago, L.P. v. Euler-Hermes Am. Credit Indem. Co.*, 602 Fed. Appx. 981, 983 (5th Cir. 2015) (stating that insurance agencies are only liable under the Prompt Payment Act if they are found liable for a claim); *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 806–07 (Tex. 2007) ("The [prompt payment] statute's penalties have always been payable only to those who can recover on a policy, and only to the extent of amounts 'ultimately determined to be owed.'" (citing and quoting *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 426–28 (Tex. 2004)). As a result, their claims should be dismissed.

## V. CONCLUSION

For each of the reasons stated above, Defendants Allstate Fire and Casualty Insurance Company and Allstate County Mutual Insurance Company respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ Roger D. Higgins*
Roger D. Higgins
Texas Bar No. 09601500
Mark J. Jung
Texas Bar No. 24012934
Elizabeth Lee Thompson
Texas Bar Number 00788290

Ashley B. Pedigo
Texas Bar No. 24095731
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8200
Facsimile: (214) 871-8209
E-mail: rhiggins@thompsoncoe.com
E-mail: mjung@thompsoncoe.com
E-mail: lthompson@thompsoncoe.com
E-mail: apedigo@thompsoncoe.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that on this 25th day of November, 2019, a true and correct copy of the foregoing was delivered to the following counsel of record via E-service:

Richard D. Daly
John Scott Black
DALY &BLACK, P.C.
2211 Norfolk Street, Suite 800
Houston, TX 77098
T: (713) 655-1405
F: (713) 655-1587
ecfs@dalyblack.com
rdaly@dalyblack.com
jblack@dalyblack.com

*/s/ Roger D. Higgins*
Roger D. Higgins