IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CASE NO: 3:19-cv-1935-K

ANDREA CODY, TRAEVION LOVE,
BRITTANY BURK and DANA
WHITFIELD, individually and on behalf of
all others similarly situated,

      Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY and ALLSTATE
COUNTY MUTUAL INSURANCE COMPANY,

      Defendants.

_____ /

## **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DOC. 32)**

i

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 1

III. MEMORANDUM ........................................................................................................ 3

    1.    LEGAL STANDARD ON MOTION TO DISMISS ........................................... 3

    2.    LEGAL STANDARDS ON POLICY INTERPRETATION ............................... 4

    3.    ARGUMENT ....................................................................................................... 4

        a.    Texas Law Is Firmly Established that the ACV of Total Loss Insured Property Equals Replacement Cost Minus Depreciation and Includes Costs Reasonably Likely to Be Incurred in Replacement ...................................................................................... 5

        b.    Even If Actual Cash Value Equates to Market Value, Plaintiffs Are Entitled to Recover ... 11

        c.    Basic Principles of Insurance Favors Plaintiff's Policy Interpretation ......................... 13

        d.    Plaintiffs' Prompt Payment Act Claim Should Not Be Dismissed ............................... 16

        e.    Fees Are an Element of Actual Cash Value .................................................................. 17

        f.    Dismissal at this Stage of the Pleadings Would Be Inappropriate ................................ 18

IV. CONCLUSION ............................................................................................................ 20

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Adams v. State Farm Mut. Ins. Co.*, 264 S.W.3d 424 (Tex. App. 2008) ......................... 10, 19

*Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d (Tex. 2003) ........................................... 4, 10

*Atterbury v. Brinson*, 871 S.W.2d 824 (Tex. App.-- Texarkana 1894, writ denied) ............... 7

*Ayoub v. Chubb Lloyds Ins. Co.*, 641 Fed. Appx. 303 (11th Cir. 2016) ............................. 6, 19

*Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284 (M.D. Fla. 2015) ....................... 8

*Bradley v. Allstate Ins. Co.,* 606 F.3d 215 (5th Cir. 2010) ..................................................... 13

*Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615 (N.D. Tex. 2012).. 3

*Calhoun v. U.S. Fire Ins. Co.*, 489 S.W.2d 359 (Tex. Civ. App. 1973) ................................. 19

*Carlton v. Trinity Universal Ins. Co.*, 32 S.W.3d 454 (Tex. App. – Houston [14th Dist.]) .... 10

*Carter v. Amica Mut. Ins. Co.,* 2018 WL 3093320 (D. Colo. June 22, 2018), <u>report and</u>
<u>recommendation adopted</u>, 2018 WL 4368668 (D. Colo. July 11, 2018)................................. 8

*City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d Tex. Sup. J. 747, 2001 WL 520838
(Tex. 2001)................................................................................................................................ 6

*Davis v. Geico Casualty Co., No. 2:19-CV-2477, 2020 U.S. Dist. LEXIS 2071 (S.D. Ohio*
*Jan. 7, 2020)* ............................................................................................................................ 9

*Exxon v.  Middleton*, 613 S.W.2d 40 (Tex. 1981) ................................................................ 10

*Gen. Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F. Supp. 2d 605 (W.D. Tex.
2001) ........................................................................................................................................ 19

*Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 928 (N.D. Tex. 2001)................................... 6, 7, 8, 11

*Gilderman v. State Farm Insurance Co.*, 437 Pa. Super. 217 A.2d 874 (pa. Super 1994),

appeal denied, 661 A.2d 874 (Pa. 1995) ................................................................. 7

*Glover v. Liberty Mut. Ins. Co., No. 19:21900, 2019 U.S. Dist. LEXIS 172665 (S.D. Fla. Oct. 4, 2019)* ................................................................................................... 9

*Great Texas County Mutual Insurance Co. v. Lewis*, 979 S.W.2d 72 (Tex. App.-- Austin 1998, no pet.)* .......................................................................................................... 6

*Greenspoint Investors, Ltd. V. Travelers Lloyds Ins. Co.*, 2015 U.S. Dist. LEXIS 25301 (S.D.Tex. March 3, 2015) .................................................................... 7, 8, 10, 19

*Guarantee County Mutual Insurance Co. v. Williams*, 732 S.W.2d 57 (Tex. App.-- Amarillo 1987, no writ) ................................................................................................... 6

*Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371 (5th Cir. 2003) ...................... 3, 19

*Kapps v. Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004) ................................... 3

*Keith v. J.D. Byrider Sys., LLC*, 2014 U.S. Dist. LEXIS 145986 (N.D. Tex. 2014) .......... 3, 19

*Kelly v. Nihamoff*, 868 F.3d 371 (5th Cir. 2017) ................................................. 8

*Lowery v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 805 F.3d 204 (5th Cir. 2015) ....................... 12, 13

*Lubbock Cnty. Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F.3d (5th Cir. 1998) ....................................................................................................... 4

*Lukes v. Am. Family Mut. Ins. Co.*, 455 F. Supp. 2d 1010 (D. Ariz. 2006) ............................ 9

*Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008) ..................................... 9

*Murmur v. Bd. of Adjustment of Dallas*, 718 S.W.2d 790 (Tex. App. 1986) ........................ 17

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Kasler Corp.*, 906 F.2d 239 (5th Cir. 1990) ... 4

*Nat'l Union Fire Ins. Co. v. McMurray,* 342 F. App'x 956 (5th Cir. 2009) ............................ 4

*Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F. Supp. 2d 866 (N.D. Tex. 2013) ............................ 3

*Ostendorf v. Grange Indemnity Insurance Co., No. 2:19-CV-1147, 2020 U.S. Dist. LEXIS*

*5163 (S.D. Ohio Jan. 13, 2020)* ........................................................................... 9

*Pearson v. Geico Cas. Co.,* 2018 WL 2096348 (D. Colo. May 7, 2018), <u>report and</u>

<u>recommendation adopted in part</u>, 2018 WL 4368667 (D. Colo. June 3, 2018)........................ 9

*Queen Ins. Co. v. Dominguez*, 426 S.W.2d 286 (Tex. Civ. App. - San Antonio 1968)...... 9, 10

*Religious of the Sacred Heart of Texas v. City of Houston*, 836 S.W.2d 606 (Tex. 1992)....... 7

*Roth v. Geico Gen. Ins. Co.,* No. 16-62942, (S.D. Fla. 2018) .................................................. 8

*Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-890-Orl-40KRS, (M.D. Fla. Mar. 9, 2019)

.................................................................................................................................. 8

*Stuyvesant v. Driskill*, 244 S.W.2d 291 (Tex. Civ. App. – Fort Worth 1951, no writ)....... 9, 10

*Texas Farm Bureau Ins. Co. v. Wilde*, 385 S.W. 3d 733 (Tex. App. - El Paso 2012)............ 10

*Texas Supreme Court in Religious of the Sacred Heart of Tex. v. Houston*, 836 S.W.2d 606

(Tex. 1992)........................................................................................................................ 12

*Tolar v. Allstate Tex. Lloyds Co*., 772 F.Supp.2d 825 (N.D.Tex. 2011) ........................ 7, 8, 11

*Trinity Universal Ins. Co. v. Emplrs Mut. Cas. Co*., 592 F.3d 687 (5th Cir. 2010) ........... 4, 10

*Triple S Props. v. St. Paul Surplus Lines Ins. Co.*, 2010 U.S. Dist. LEXIS 106653 (N.D. Tex.

Oct. 5, 2010) ....................................................................................... 10, 11, 13, 20

*United States Fire Insurance Co. v. Stricklin,* 556 S.W.2d 575 (Tex. Civ. App.-- Dallas

1977), writ ref'd n.r.e. 565 S.W.2d 43 (Tex. 1978) ................................................................ 6

*Welsh v. Navy Fed. Credit Union*, 2017 U.S. Dist. LEXIS 220675 (W.D. Tex. June 9, 2017)............ 3

**Other Authorities**

*American Institute of Real Estate Appraisers, The Appraisal of Real Estate* (9th ed. 1987) ........ 10

12 *Couch On Insurance* § 175:19; § 176:4; (3d. Ed. 2019)..................................................... 5, 13

*New Appelman On Insurance Law Library Edition*, Vol. 6 § 62.08[1][c] ..................................... 5

*Salesin v. State Farm Fire & Casualty Co.*, 229 Mich. App., N.W.2d (Mich. App.), appeal

denied.......................................................................................................................... 10

**COME NOW** the Plaintiffs Andrea Cody, Traevion Love, Brittany Burk, and Dana Whitfield ("Plaintiffs"), and file this Response in Opposition to Allstate Fire And Casualty Insurance Company's and Allstate County Mutual Insurance Company's (hereinafter collectively "Allstate") Motion To Dismiss (Doc. 32) and further state in support the following:

## I. INTRODUCTION

This lawsuit was brought by the Plaintiffs and all others similarly situated insureds that suffered damages due to Defendants' practice of refusing to pay the full actual cash value ("ACV") of total-loss vehicles to first-party insureds who suffer a total loss of their vehicles insured under a physical damage policy containing comprehensive and collision coverage.

Pursuant to its uniform promise, Allstate owes insureds the costs reasonably necessary to replace the total-loss vehicle, specifically sales tax and title fees, registration fees, safety inspection fees and emissions inspection fees ("Fees"). Nevertheless, Allstate sometimes fails to pay the full amount of Sales Tax and Fees to total-loss insureds. This failure to pay the full ACV of the total-loss vehicle constitutes a material breach of contract.

## II. FACTUAL BACKGROUND

Plaintiffs' allegations, which must be taken as true, are simple. All Plaintiffs were insured under Allstate policies ("Policy") containing uniform language. Amended Complaint, "AC," Doc. 22 at 4, ¶16. The Policy states that "Auto Collision Coverage" means, *inter alia*, coverage for loss to the insured vehicle caused by collision with another object or upset of the vehicle (*Id*. at ¶ 17) and "Auto Comprehensive Coverage" means loss not caused by collision. Id. at ¶ 18. A "loss" triggers coverage and payment under the Policy. *Id*. at ¶ 19. The "limit of liability" for loss is the "[ACV] of the vehicle at the time of loss" and ACV is not defined in the Policy. The "Limit of Liability" section involves other provisions applicable to partial losses, but inapplicable to total losses. Specifically, in

1

the case of partial loss coverage is capped at the amount necessary to "repair or replace the [vehicle] with other of like kind and quality." Defendants adjust every total-loss claim under the ACV Policy provision. *Id*. at ¶ 20. Defendants determined that each loss at issue suffered by Plaintiffs was a "total-loss" – meaning that the cost to repair the damage exceeded the ACV of the vehicle (*Id*. at ¶ 21) – thus necessarily triggering payment of the ACV of the insured vehicle. *Id*. at 5, ¶ 22.

The Policy language does not include: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment for any purpose whatsoever; (3) a provision requiring insured to obtain a replacement vehicle; or (4) any provision linking the ACV determination to salvage retention. *Id*. at ¶ 25. Defendants, by promising to pay the ACV of the vehicle in the event of a total loss, promised to pay sales tax and title fees, registration fees, and inspection fees that are not only reasonably necessary, but are in fact mandatory. *Id*. at ¶ 28.

Plaintiff Cody, insured under an Allstate Fire policy, was involved in an accident on August 27, 2017, which Allstate Fire to be a total loss, and paid an amount that included Sales Tax of $2355.38 and a "DMV" fee of $35.50. *Id*. at ¶¶ 48-51. Cody contends that Allstate Fire underpaid her claim because she is owed (at minimum) Fees of $117.00, or an additional $81.50 beyond the $35.50 paid by Allstate. *Id*. at ¶52.Plaintiff Love, insured under an Allstate County policy, was involved in an accident on December 20, 2017, which Allstate County determined to be a total loss, and paid an amount that included sales tax of $730.19 and a "DMV" fee of $35.50. *Id*. at ¶¶ 56-60. Love contends that Allstate County underpaid his claim because he is owed (at minimum) Fees of $83.75, or an additional $48.25 beyond the $35.50 paid by Allstate. *Id*. at ¶61. Plaintiff Burk, insured under an Allstate Fire policy, was involved in an accident on November 12, 2018, which Allstate determined to be a total loss, and paid an amount that did not include any amounts for Sales Tax or Fees. *Id*. at ¶¶ 66-71. Burk contends that Allstate Fire underpaid her by not paying any amount at all

for Sales Tax or Fees. *Id*. at ¶72. Finally, Plaintiff Whitfield, insured under an Allstate Fire policy, was involved in an accident on August 28, 2017, which Allstate determined to be a total loss, and paid an amount that included sales tax of $1006.25 and fees of $35.50. *Id*. at ¶¶ 75-79. Whitfield contends that Allstate Fire underpaid the claim because she is owed (at minimum) Fees of $117.00, or an additional $81.50 beyond the $35.50 paid by Allstate. *Id*. at ¶ 80.

### III.   MEMORANDUM

### 1.   LEGAL STANDARD ON MOTION TO DISMISS

In analyzing a motion to dismiss for failure to state a claim, "[t]he court accept[s] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012). "This Court must construe the factual allegations in a complaint, and all reasonable inferences therefrom, in the light most favorable to the plaintiffs." *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Welsh v. Navy Fed. Credit Union*, 2017 U.S. Dist. LEXIS 220675, at *9 (W.D. Tex. June 9, 2017). A motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Kapps v. Torch Offshore, Inc.,* 379 F.3d 207, 210 (5th Cir. 2004).

A breach of contract claim requires proof of four elements: (1) a valid contract, (2) plaintiff's performance, (3) breach, and (4) damages resulting from the breach. *See Orthoflex, Inc. v. ThermoTek, Inc*., 983 F. Supp. 2d 866, 872 (N.D. Tex. 2013). At the motion to dismiss stage, a court may "resolve issues of contract interpretation when the contract is properly before the Court, but must resolve all ambiguities in the contract in [p]laintiffs' favor*." Keith v. J.D. Byrider Sys., LLC*, 2014 U.S. Dist. LEXIS 145986, at n.4 (N.D. Tex. 2014).

3

## 2.    LEGAL STANDARDS ON POLICY INTERPRETATION

Texas law is clear that if the terms of a policy are clear or unambiguous, the policy must be enforced as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Kasler Corp.*, 906 F.2d 196, 198 (5th Cir. 1990). A policy's terms must be given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense. *Nat'l Union Fire Ins. Co. v. McMurray,* 342 F. App'x 956, 958 (5th Cir. 2009). If, however, the terms of a policy are susceptible to more than one reasonable interpretation, such term is ambiguous as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003) (citations omitted). In that case, "the court must adopt the insured's construction of the provision, 'as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent.'" *Lubbock Cnty. Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 143 F.3d 239, 242 (5th Cir. 1998) (*quoting Nat'l Union*, 811 S.W.2d at 555). Said another way, "[t]he court must resolve all doubts regarding coverage in favor of the insured." *Trinity Universal Ins. Co. v. Emplrs Mut. Cas. Co.,* 592 F.3d 687, 691 (5th Cir. 2010).

## 3.    ARGUMENT

Plaintiffs are owed the ACV of their insured total-loss vehicles, which includes sales tax, title fees, and applicable state and county registration fees, safety inspection fees and emissions inspection fees (collectively "Fees"), which are unavoidable costs to replace the total-loss vehicles. Plaintiffs' argument is premised on three simple points. First, Defendant's Policy does not define ACV, and Texas law unambiguously defines ACV to equate with market value and to include necessary replacement costs – thus, Defendants' preferred interpretation of ACV as "market value" is not a dispute of Plaintiffs' allegations. Second, ACV policies are policies of indemnification, which, under basic insurance principles, must (at minimum) place insureds into their pre-loss

4

condition. Third, even if this Court is unconvinced about any of the first four points, dismissal at this stage would be inappropriate.

      a.      **Texas Law Is Firmly Established that the ACV of Total Loss Insured Property Equals Replacement Cost Minus Depreciation and Includes Costs Reasonably Likely to Be Incurred in Replacement**

Allstate owes Plaintiffs and similarly situated class members the cost reasonably likely to be incurred in purchasing a vehicle to replace their total loss insured vehicles, specifically Sales Tax and Fees, and that Allstate routinely underpays the amount owed, and sometimes (as in Plaintiff Burk's case) fails to pay them at all. These failures constitute a breach of contract.

As indicated above, the operative Policy language obligates Allstate to pay for loss of or to the auto. The Policy does not state the measure of damages payable under the Policy other than to state that Allstate will pay for the "loss" to the covered vehicle in money or by repairing or replacing it, which would include mandatory Sales Tax and Fees. Exhibit B to the AC (Policy) at 9-10 of 14 (Payment for Loss clause). The Policy, however, limits the amount Allstate will pay for a loss to the lesser of ACV and the cost to repair the damage to the vehicle.[1]

Because this case deals with total losses of the insureds' vehicles, the focus is on subsection 1, limiting Allstate's liability to the vehicle's ACV. Allstate must demonstrate that Plaintiffs seek amounts exceeding the vehicle's ACV. *See Ayoub v. Chubb Lloyds Ins. Co.*, 641 Fed. Appx. 303, 307 (11th Cir. 2016) ("[A] contractual limitation of liability…falls upon the insurer to plead and

---

[1] *See New Appelman On Insurance Law Library Edition*, Vol. 6 § 62.08[1][c] ("Rather than pay [ACV], an insurer has the option of paying the amount necessary to repair the damage or replace the damaged parts with property of like kind and quality" and applies "when the vehicle is not a total loss."); *Couch On Insurance* 3d., § 176:4 ("Repair and replacement options are also generally inapplicable to circumstances of total loss") (cites omitted); *Id*. at § 175:40 ("[T]he word 'replacement' means replacement of parts and not of the entire car[.]").

prove"). Even facially, then, dismissal is precluded here – Defendants cannot meet *a burden of proof placed on them* at the pleadings stage of the litigation.

In *Crisp v. Security Nat'l Ins. Co.*, 369 S.W.2d 326, 330 (Tex. 1963) the Court addressed the question of the meaning to attribute the term "ACV" in, as here, a limitation of liability provision:

> The limitation that "liability herein shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation" may be construed as meaning the **price of new property**, as of the time of loss, of the same material quality as the kind destroyed less the amount that the destroyed property would have depreciated over the period of time owned and used by the insured . . .

(Emphasis added).

Additional cases, interpreting and applying Texas law, arrive at the same conclusion: that the term ACV equates to replacement cost  (or, as in *Crisp*, "price")  minus depreciation. For example, in *Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 928, 934 (N.D. Tex. 2001), the court interpreted Texas law to conclude that ACV means "fair market value" and is calculated as the repair or replacement cost, including sales tax, minus depreciation. The court stated:

> "Actual cash value" is not defined by the policy. Under Texas law, the term "actual cash value" is synonymous with "fair market value." *See Great Texas County Mutual Insurance Co. v. Lewis*, 979 S.W.2d 72, 74 (Tex. App.-- Austin 1998, no pet.); *Guarantee County Mutual Insurance co. v. Williams*, 732 S.w.2d 57, 60 (Tex. App.-- Amarillo 1987, no writ); *United States Fire Insurance Co. v. Stricklin,* 556 S.W.2d 575, 582 (Tex. Civ. App.-- Dallas 1977), writ ref'd n.r.e. 565 S.W.2d 43 (Tex. 1978). "Fair market value" is the price a willing purchaser who was under no obligation to buy paid to a willing owner who was under no obligation to sell. *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 44 Tex. Sup. J. 747, 2001 WL 520838 at *3 (Tex. 2001); *Atterbury v. Brinson*, 871 S.W.2d 824, 828 (Tex. App.-- Texarkana 1894, writ denied). This price can be quantified in one of three ways: (1) comparable sales; (2) the income capitalization approach; or (3) the cost of repair or replacement less depreciation. *See Religious of the Sacred Heart of Texas v. City of Houston*, 836 S.W.2d 606, 615-16 (Tex. 1992), *citing American Institute of Real Estate Appraisers, The Appraisal of Real Estate* at 62 (9th ed. 1987) (note omitted).
>
> The court concludes that "actual cash value" under the policy means repair or replacement costs less depreciation. "Repair or replacement costs include any cost

Case 3:19-cv-01935-K   Document 34   Filed 02/03/20   Page 13 of 27   PageID 594

that an insured is reasonably likely to incur in repairing or replacing a covered loss." *Salesin v. State Farm Fire & Casualty Co*., 229 mich. App. 346, 581 N.W.2d 781, 790 (Mich. App.), appeal denied, 615 N.W.2d 738 (Mich. 1998) *quoting Gilderman v. State Farm Insurance Co*., 437 Pa. Super. 217, 649 A.2d 874 (pa. Super 1994), appeal denied, 661 A.2d 874 (Pa. 1995) (note omitted). Contractor's overhead and profit and sales tax clearly fit this definition. These amounts should be included in the actual cash value award.

*See also Greenspoint Investors, Ltd. V. Travelers Lloyds Ins. Co.*, 2015 U.S. Dist. LEXIS 25301 at 12-13 (S.D.Tex. March 3, 2015) ("[T]he linchpin and calculation of replacement costs appears to be whether the challenged cost is reasonably likely to be incurred or not. The court concludes that to determine ACV, the jury may consider the replacement cost of the insured property at the time of loss, meaning, the cost reasonably likely to be incurred in repairing or replacing the damaged property less depreciation."); *Tolar v. Allstate Tex. Lloyds Co*., 772 F.Supp.2d 825, 831 (N.D.Tex. 2011) ('"Texas courts have defined the term 'actual cash value' as 'repair or replacement costs less depreciation'" and Texas law unambiguously…defines 'replacement costs as 'any cost that an insured is reasonably likely to occur in repairing or replacing a covered loss.'").

Conspicuously absent from Defendants' Motion is any reference to the above case law which Plaintiffs submit addresses the precise issue before the Court – whether an ACV settlement of a total loss includes costs reasonably necessary to replace the insured property. Instead of addressing this case law head-on, Defendants, relying on irrelevant case law, advance the argument that Texas law "unambiguously" supports Defendants' contention that ACV under the Policy excludes sales tax and mandatory fees. Motion to Dismiss at 9-14. As demonstrated above, Defendants are wrong because, amongst other reasons, *Ghoman, Greenspoint* and *Tolar* are directly on point.

The apparent implication from Defendants' argument is that the decisions by federal courts are not "Texas law." This position completely ignores the plain fact that in deciding those cases, the courts looked to extensive decisions by Texas state courts. Further, when sitting in diversity, a

7

district court's function is to first look at decisions of the Texas Supreme Court and if that court has not ruled, "the courts then project that court's likely resolution of a case presenting facts such as those before [it]." *See Kelly v. Nihamoff*, 868 F.3d 371, 374 (5th Cir. 2017). In the absence of a direct holding by the Texas Supreme Court, the courts defer to the holdings of lesser courts. *Id*.

The *Ghoman, Greenspoint* and *Tolar* cases, decided by federal district courts sitting in diversity, were not decided in a vacuum; rather, the courts reached the results in those cases following a studied application of Texas law. Further, none of the Texas cases relied upon by Defendants contradict the holdings of *Ghoman, Greenspoint* and *Tolar* that the ACV settlement of a total loss to insured property includes the cost which would reasonably be incurred in replacing that property. Finally, and in addition, and as also indicated above, *Crisp*, a Texas Supreme Court case, also supports Plaintiffs' claim that ACV means replacement cost minus depreciation. See also *Roth v. GEICO Gen. Ins. Co., 2018 U.S. Dist. LEXIS 226554, at \*9 (S.D. Fla. June 13, 2018)* (judgment in favor of certified class holding that promise to pay ACV of total-loss vehicle obligated Geico to pay title transfer fee and proper sales tax); *See, e.g., Sos v. State Farm Mut. Auto. Ins. Co., 396 F. Supp. 3d 1074, 1081 (M.D. Fla. 2019)* (undefined ACV requires payment of replacement costs, including sales tax and title transfer fee); *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (insurer paid title and tag transfer fee amounts but was also required to pay full sales tax under policy requiring payment of ACV for a total-loss vehicle); *Carter v. Amica Mut. Ins. Co.,* 2018 WL 3093320 (D. Colo. June 22, 2018), report and recommendation adopted, 2018 WL 4368668 (D. Colo. July 11, 2018) (insurers required to pay registration fees on total-loss vehicles, and denying motion to dismiss related to sales tax and title fees); *Pearson v. Geico Cas. Co.,* 2018 WL 2096348 (D. Colo. May 7, 2018), report and recommendation adopted in part, 2018 WL 4368667 (D. Colo. June 3, 2018) (denying motion to dismiss because sales tax and mandatory

fees were owed); *Davis v. Geico Casualty Co., No. 2:19-CV-2477, 2020 U.S. Dist. LEXIS 2071 (S.D. Ohio Jan. 7, 2020); Ostendorf v. Grange Indemnity Insurance Co., No. 2:19-CV-1147, 2020 U.S. Dist. LEXIS 5163 (S.D. Ohio Jan. 13, 2020); Glover v. Liberty Mut. Ins. Co., No. 19:21900, 2019 U.S. Dist. LEXIS 172665 (S.D. Fla. Oct. 4, 2019); Mills v. Foremost Ins. Co*., 511 F.3d 1300, 1305 (11th Cir. 2008) (ACV includes replacement costs, including sales tax, reasonably likely to be incurred in replacement); *Lukes v. Am. Family Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1015 (D. Ariz. 2006) (noting that even if defined as "fair market value," ACV would include necessarily-incurred replacement costs such as sales tax). Interpreting ACV to include replacement costs (less depreciation) also comports with the Texas Department of Insurance, which similarly provides that ACV, in the context of auto insurance, means costs of replacement minus depreciation. As Plaintiffs alleged, Sales Tax and Fees are incontrovertibly costs imposed on the purchase of every vehicle, and are therefore unavoidable and mandatory replacement costs. As such, they are owed under the Policy.

The case law cited by Defendants does not undermine Plaintiffs' claims. For example, *Stuyvesant v. Driskill*, 244 S.W.2d 291, (Tex. Civ. App. – Fort Worth 1951, no writ) *and Queen Ins. Co. v. Dominguez*, 426 S.W.2d 286 (Tex. Civ. App. - San Antonio 1968) speak in generalities as to the measure of recovery under a policy (i.e. reasonable cash market value) but the cases are utterly silent on whether that measure includes costs which would be incurred upon replacement. In fact, in *Queen*, the court emphasized that the jury had concluded that the insured vehicle in question was not a total loss. *Queen*, 426 S.W.2d at 288-89.

Additional cases relied upon by Defendants, for their position as to the measure of recovery, *Exxon v. Middleton*, 613 S.W.2d 40 (Tex. 1981); *Texas Farm Bureau Ins. Co. v. Wilde*, 385 S.W. 3d 733 (Tex. App. - El Paso 2012); *Am. Mfrs. Ins. Co. v. Schaefer*, 124 S.W.3d 154 (Tex. 2003) and

*Carlton v. Trinity Universal Ins. Co.*, 32 S.W.3d 454 (Tex. App. – Houston [14th Dist.]) suffer from the same infirmity as *Stuyvesant* and *Driskill* in that they simply do not address the question before the Court – that is, whether the ACV of the total loss insured vehicle includes costs which will necessarily be incurred in replacing the vehicle.

Defendants entirely miss the point, in that the question is not how ACV is literally defined – reasonable cash value, market value, replacement cost less depreciation, etc. – but rather how ACV is measured and whether, however defined, ACV is interpreted to include consideration of necessary replacement costs. In addition to the cases Plaintiffs outline above, numerous Texas cases make clear that ACV is interpreted and measured to include consideration of replacement costs. For instance, in *Adams*, the court upheld the jury's determination of the amount of ACV, which included $635.55 in Sales Tax and Fees. *Adams v. State Farm Mut. Ins. Co.*, 264 S.W.3d 424, 428-29 (Tex. App. 2008). In *Greenspoint*, the court noted that the "reasonable cash" market value of property required the factfinder to consider costs reasonably likely to be incurred. 2015 U.S. Dist. LEXIS 25301, at *12-13 (S.D. Tex. Mar. 3, 2015) ("because ACV is synonymous with 'fair market value,' meaning, the actual cash loss to the insured," a jury should consider costs necessarily incurred in replacing the property). Another court explained that because there are numerous methods for measuring ACV – specifically, numerous methods for measuring market value – one of which is replacement costs less depreciation, it is reasonable to interpret ACV to require consideration of such costs. *See Triple S Props. v. St. Paul Surplus Lines Ins. Co.*, 2010 U.S. Dist. LEXIS 106653, at *17 (N.D. Tex. Oct. 5, 2010) (rejecting argument that "there exists only one method for calculating fair market value [and thus] to calculate ACV under the…policy" because "'market value' can be defined in three ways, including replacement cost less depreciation" and holding Policy did not foreclose cost method to quantify ACV.)

Clearly, Defendants miss the mark by simply proposing a term utilized to help contextualize ACV – i.e., reasonable cash market value – and then simply assert in a conclusory fashion that such term would not encompass mandatory Sales Tax and Fees. Plaintiffs submit that on this question Texas law is clear that such costs are recoverable, and at minimum should be considered by a factfinder. This applies *a fortori* at the pleadings stage, when it is Defendants' burden to show that its Policy unambiguously forecloses consideration of the costs Plaintiffs seek.

Accordingly, the Motion to Dismiss should be denied.

        b.      <u>Even If Actual Cash Value Equates to Market Value, Plaintiffs Are Entitled to Recover</u>

In their Motion, Defendants point to several Texas statutes in support of their argument that ACV equates to market value. Motion to Dismiss at 14-15. The statutes, of course, do not address whether under first-party policies providing coverage for the ACV of totaled property, coverage is provided for costs and expenses which would reasonably be incurred in replacing the property. Further, the statutes, in any event, do not support Defendants' Motion because under Texas law, market value includes consideration of replacement cost. *See Ghoman*, 159 F. Supp. 2d at 934 (ACV means "fair market value" which is calculated as repair or replacement costs as depreciation, including sales tax); *Tolar*, 772 F. Supp. 2d at 831 (Texas courts equate ACV market value as "repair or replacement costs less depreciation"); *see also Triple S Props.*, 2010 U.S. Dist. LEXIS 106653, at *17 (rejecting argument that "there exists only one method for calculating fair market value [and thus] to calculate ACV under the . . . policy because 'market value' can be defined in three ways, including replacement cost less depreciation" and holding policy did not foreclose cost method to quantify ACV).

In addition, as the Fifth Circuit explained in *Lowery v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 805

F.3d 204, 210 (5ᵗʰ Cir. 2015), in a well-functioning market (like automobiles) "replacement costs minus depreciation" and "market value" are essentially synonymous. The court's ruling in *Lowery* is consistent with that of the *Texas Supreme Court in Religious of the Sacred Heart of Tex. v. Houston*, 836 S.W.2d 606, 615-16 (Tex. 1992) wherein the Texas Supreme Court expressly held that market value can be determined by not only comparable sales and income capitalization, but, as recognized in *Lowery*, replacement cost minus depreciation. Defendants suggest this Court should take a term undefined in its Policy (ACV), find that it means market value, and then find that one of the accepted methods for measuring market value (replacement costs less depreciation) is unambiguously foreclosed by the Policy, notwithstanding that it is the measurement prescribed by numerous courts, permitted as a factor by all courts, is "synonymous" with market value in well-functioning markets, and notwithstanding that, at minimum, "market value" is an issue of fact. Respectfully, such a holding would, *inter alia*, impermissibly transform a factual question into a legal question (and then resolve such legal question against Plaintiffs at the pleadings stage) and permit Defendants to meet their burden and proving their limitation on liability forecloses consideration of mandatory replacement costs *at the pleadings stage* and without evidence.

Moreover, Defendants make no effort to point to any policy provision explaining which method – income capitalization, comparable sales, or replacement cost less depreciation – should be utilized to measure fair market value. Clearly income capitalization is irrelevant, and the "comparable sales" methodology would also require consideration of Sales Tax and Fees, because, *inter alia*, Texas requires car sellers to include sales tax, title fees, and registration fees in sales of motor vehicles. Exh. A (Texas Motor Vehicle Registration Handbook) at Chap. 17.2 (Car dealers

"must collect and remit any applicable sales tax, title, and registration fees").[2] Certainly, Defendants make no effort to explain why consideration of such mandatory costs is foreclosed by whatever methodology Defendants believe should be utilized. *See Triple S Props.*, *17 (policy did not foreclose cost method to quantify ACV).

Contrary to Defendants' contention recovery under a market value standard would not include costs reasonably incurred in replacing the insured property, controlling case law holds precisely the opposite.

### c.      Basic Principles of Insurance Favors Plaintiff's Policy Interpretation

Additionally, basic principles of insurance favors Plaintiff's interpretation of the Policy and suggests that mandatory replacements costs should be included in ACV payment for total-loss insureds. ACV policies are (at minimum) policies of indemnification, which are intended to place insureds into their pre-loss position, or their position had the loss not occurred. *Safeco Ins. Co. of Indiana v. Gregory*, 2014 U.S. Dist. LEXIS 114617, at *11 (W.D. Tex. Aug. 18, 2014) ("The purpose of an [ACV] insurance policy is to indemnify the property owner and place him in the position he would have been in had the loss not occurred[.]"); *Lowery*, 805 F.3d at 207-08 (ACV policies are "contracts of indemnity"); 12 Couch on Ins. § 175:19 (3d. Ed. 2019) (ACV policies are pure indemnity contracts); *Bradley v. Allstate Ins. Co.,* 606 F.3d 215, 227 (5th Cir. 2010) ("The fundamental principle of a property insurance contract is to indemnify the owner against loss, that is to place him or her in the same position in which he would have been if no [loss] had occurred.").

Clearly, prior to the loss, Plaintiffs were not facing a situation where, in order to continue ownership of their vehicles, they needed to pay Sales Tax (in Plaintiff Burk's case) and mandatory

---

[2] Because the Handbook is a 345-page document, Exhibit B is limited to the identifying title pages and the cited section, i.e. 17.2.

Fees (in all Plaintiffs' cases). Following the loss, Plaintiffs faced precisely that situation. Defendants' position that Plaintiffs must bear part of the cost of their own indemnity contradicts longstanding and well-established insurance principles across virtually all jurisdictions that payment of ACV requires indemnity.

Allstate's ostensible basis is that the terms of the policy control, and if the relevant policy terms promise less than indemnity, then indemnity is not required. Motion at 16-17. This is both true and utterly irrelevant. Insurers are free to promise less than ACV and thus less than indemnity[3] – but that has nothing to do with whether ACV itself is "pure indemnity." Here, Allstate concedes it owes ACV to Plaintiffs. Thus, it is irrelevant that Allstate could have promised something less than indemnity, and does in fact owe less than indemnity in the context of a partial loss (where Allstate owes only the repair costs and not ACV).

Allstate relies almost entirely on *Schaefer* in support of its argument, notwithstanding that *Schaefer* supports *Plaintiffs'* position. Motion at 17.  There, the insured suffered a partial loss of his vehicle, and thus the insurer paid the cost to repair the vehicle because the policy at issue, like Allstate's, limited liability to the lesser of repair costs and ACV. 124 S.W.3d at 156. While conceding the repairs were adequately performed, the insured sued, claiming the insurer owed not only the repair costs, but also the inherent "diminished value" caused by the accident despite the adequate repairs and arguing such payment was necessary to effectuate the policy's "underlying purpose to fully indemnify the insured." *Id*. at 156-57.

However, the Court rejected the argument because to require indemnity for partial losses, as the insured requested, would *require payment of ACV. Id*. 157, 159 (rejecting insured's argument

that policy requires indemnification for partial losses because to repair the damage and pay diminished value would **require payment of "[ACV] in every instance."**) (emphasis added). While implicitly confirming ACV is indemnity, the Court held that the limit on liability at issue required less than ACV (and therefore less than indemnity). *Id.* But here, Defendants agree ACV is the relevant limitation, rendering it irrelevant that something less than ACV could have been promised. To require indemnity "in every instance", as *Schaefer* put it, would render the "less than" indemnity provisions meaningless, but this is precisely the "instance" where ACV (and thus indemnity) *is* required. Allstate's argument is unresponsive – Plaintiff's claim is not that indemnity is required because all property damage insurance policies are by their nature indemnity contracts irrespective of actual policy language; Plaintiff's claim is that *Allstate's actual policy chose to promise indemnity for total-losses*.

Allstate betrays its misunderstanding by focusing on *Schaefer*'s distinction between first- and third-party partial loss claims. Motion at 17 (citing 124 S.W.3d at 161). Under tort law, an injured party is not limited by contract, and the insured tortfeasor is liable to make the injured party whole (including for partial losses). In first-party cases, however, parties are free to contract and limit liability, including, as Allstate did, by limiting liability to restoration of the physical damage rather than indemnity. 124 S.W.3d at 161 ("[t]he policy's first party collision coverage…does not undertake to indemnify the insured against all loss *that the insured's negligent conduct might cause*" and noting distinction between first- third-party partial loss claims), 159 ("To incorporate diminished value into

---

[3] Allstate does precisely that, by promising to pay the "lesser" of ACV and repair costs. If the repair costs are less than ACV, Allstate would not be required by its Policy to pay ACV, and thus would not be required to pay indemnity.

the 'repair or replace' provision would render the 'lesser of' language meaningless.").[4] If ACV is indemnity (true) and "repair or replacement" is less than ACV where the loss is partial (also true), then by logical necessity, the insurer's obligation for partial losses is less than indemnity. Thus, *Schaefer* implicitly confirms ACV is indemnity – the insured argued he was entitled to indemnification, which *Schaefer* rejected because that would require payment of ACV (indemnity) even for partial losses. Far from without comment overruling decades of Texas law and uncontroverted insurance principles, *Schaefer* did precisely the opposite and *confirmed* such principles. That Allstate *could* have promised less than ACV and that it *did* promise less than ACV for partial losses (i.e. where repair costs are less than ACV) says nothing about whether ACV is itself a promise to indemnify. Under the aforementioned (uncontroverted) authorities, ACV is "pure indemnity," a position *Schaefer* does not overturn but rather (at least implicitly) confirms.

### d.  Plaintiffs' Prompt Payment Act Claim Should Not Be Dismissed

Defendants' sole basis for dismissal of Plaintiffs' claim for violation of the Prompt Payment Act is that the underlying Breach of Contract claim should supposedly be dismissed. Mot. at 15-16. Because the contract claim should not be dismissed, however, the Prompt Payment Act claim

---

4 Note Allstate's attempt at sleight of hand here. Allstate seeks to transform *Schaefer*'s distinction between first-party and third-party claims into a distinction between liability coverage and first-party coverage. Schaefer's actual point is that the injured third-party must be made whole under tort principles (whether by the tortfeasor insured or by the tortfeasor's insurer), while first-party insureds are bound by contract. But insureds are bound by contract whether they are the tortfeasor or the injured party. Insurers are also free to promise less than indemnity for liability coverage. Allstate's argument is nothing more than an assertion that it is permitted to promise less than indemnity, an assertion with which Plaintiffs agree. But the question remains – did they promise less than indemnity or did they promise indemnity? As the Fifth Circuit, Texas law, and uncontroverted insurance principles going back for more than a hundred years make clear, ACV *is* indemnity. Allstate was under no obligation to promise ACV, but freely chose to do so.

16

follows form, and should also not be dismissed.[5]

### e.   Fees Are an Element of Actual Cash Value

Plaintiffs allege title and registration fees are part an insured vehicle's ACV. AC at ¶¶ 27-34. The total-loss vehicles were titled and registered, and such fees are included in (by car sellers) and imposed on (by the State of Texas) every vehicle transaction, and are thus part of the vehicle's insurable value as mandatory costs.[6] *Id*. As set forth extensively herein, the ACV of property includes costs necessary to replace the property and thus part of the cost in the market to procure the vehicle. *See also Murmur v. Bd. of Adjustment of Dallas*, 718 S.W.2d 790, 796 (Tex. App. 1986) (market value, in insurance context, includes consideration of replacement costs).

Allstate concedes title is required on every vehicle and that a mandatory fee is imposed, but (aside from correctly pointing out Plaintiffs' citations were sloppy) argues only that the statutes in question do not reference the *purchase* of a vehicle. Motion at 18-19. Allstate misses the point. The statutes were cited merely to demonstrate the fee amount and that it is mandatory for all vehicles in

---

[5] Defendants also reference *Singleton*, which is currently on appeal and for which oral argument is occurring on February 5, 2020. Motion at 17, n. 17 (citing *Singleton v. Elephant Ins. Co.*, No. 6:19-cv-00200-ADA, slip op. at 8, n.3 (W.D. Tex. May 10, 2019). Respectfully, *Singleton* clearly misunderstand the concept of indemnity in first-party cases, evidenced by its reliance on *D.R. Horton-Texas v. Markel Intl*, 300 S.W.3d 740 (Tex. 2009), a case discussing third-party liability indemnification, for its holding. *Id*. In the third-party context, the "duty to indemnify" is to pay whatever judgment or settlement amount is entered on a covered claim against the insured. *See, e.g.*, *D.R. Horton-Texas*, 300 S.W.3d at 743. Prior to the loss, an insured has no liability to the injured party; afterwards, the insured is liable for $X. By "paying the claim" – the judgment amount determined by the factfinder or by settlement with the injured party – the insured is indemnified by the satisfaction of their liability to the injured party. Thus, the *Singleton* court announced a black-letter rule from the context of liability insurance but which is nonsensical in this context. But it is quintessential question-begging to hold, as *Singleton* did, that "paying a claim" in the first-party context is *ipso facto* indemnity, given that the entire question is whether the amount paid was sufficient to place the first-party insured into their pre-loss position.
[6] Although this is a factual allegation Plaintiffs prove during litigation, it is self-evidently true. The value of a vehicle that is legally-operable is higher than a vehicle that is not legally-operable. See Am. Compl. at ¶ 41 (such costs are factors willing buyers and sellers consider).

Texas, and are necessary to replace a vehicle. Plaintiffs allege title fees are (1) necessary or likely to incurred in replacing the vehicle, (2) a factor willing buyers and sellers take into account, and (3) are mandatory elements of the purchase price of a vehicle, all of which are independent factual allegations that must be taken as true at the pleadings stage.[7]

Allstate argues there may be exceptions to certain registration and inspection fees Plaintiffs seek. Motion at 19-20. This issue – the extent to which fees are mandatory, whether there are relevant exceptions, etc. – are quintessentially factual questions which will be elucidated and clarified through discovery. Whether they are replacement costs reasonably necessary to replace a vehicle and whether they are factors considered by willing buyers and sellers are also factual questions which no doubt will be impacted by whether the costs are mandatory and whether car sellers include them in a vehicle's purchase price. Under Texas law, these are clearly questions whose resolution is inappropriate – indeed, foreclosed – at this stage of the pleadings.

Moreover, Allstate's argument – that no regulatory fees are owed under the Policy – is undercut by the fact that Allstate often *pays regulatory fees pursuant to the Policy*. Plaintiff Burk was not paid any amount in regulatory fees, while Plaintiffs Cody, Love, and Whitfield were paid $35.50 in regulatory fees. Am. Compl. at ¶¶ 51, 60, 71, 79.

f.   <u>Dismissal at this Stage of the Pleadings Would Be Inappropriate</u>

As stated previously, at this stage in the pleadings, the court must draw all inferences in the light most favorable to the plaintiffs. *Kane Enterprises*, 322 F.3d 371, 374. At minimum – and even in circumstances unlike this one, in which payment of replacement costs is clearly required in order

---

[7] Incidentally, while Plaintiffs are not required to provide authority for their factual allegations at this stage, it is absolutely the case that title fees are mandatory elements not only to replace a vehicle, but to purchase a vehicle. Exh. A (Handbook) (Car dealers "must collect and remit any applicable sales tax, title, and registration fees").

to achieve indemnification – replacement costs are relevant to the question of actual cash value, and a question for the factfinder. *Ayoub v. Chubb Lloyds Ins. Co.*, 641 Fed. Appx. 303 (5th Cir. 2016) (reversing district court because court did not allow consideration of costs to replace certain private items as part of the "broad range of evidence probative of ACV" required its consideration). Even in a normal contractual interpretation – in other words, not a policy of insurance – at the motion to dismiss stage, a court may "resolve issues of contract interpretation when the contract is properly before the Court, but must resolve all ambiguities in the contract in [p]laintiffs' favor." *Keith v. J.D. Byrider Sys.*, *LLC*, 2014 U.S. Dist. LEXIS 145986, at n.4 (N.D. Tex. 2014).

Moreover, Defendants argument is entirely premised on its assertion that ACV means market value. But assuming Defendants are correct, market value is itself a question of fact that cannot be resolved on a Motion to Dismiss. *See, e.g.*, *Calhoun v. U.S. Fire Ins. Co.*, 489 S.W.2d 359, 361 (Tex. Civ. App. 1973) (jury should have determined market value of property insured under ACV policy); *Adams*, 264 S.W.3d at, 428-29 (pre-accident market value of vehicle includes Sales Tax and Fees); *Gen. Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F. Supp. 2d 605, 643 (W.D. Tex. 2001) ("Where the market value is the proper measure of damages, it should be submitted to the jury[.]"); *Greenspoint Investors*, *12-13 ("The court concludes that to determine ACV, **the jury may consider** the…cost reasonably likely to be incurred in repairing or replacing the damaged property less depreciation."). This is particularly relevant given "costs less depreciation" is an accepted method for measuring market value (and is virtually synonymous with market value in the specific context of a well-function market, according to the Fifth Circuit), and is certainly not foreclosed by Defendants' policy. *Triple S Props.*, at *17 ( "'market value' can be defined in three ways, including replacement cost less depreciation" and holding Policy did not foreclose cost method to quantify ACV.). As such, at minimum, and irrespective of how this Court rules after discovery and on any

summary judgment briefing, dismissal is precluded at this stage of the litigation.

## IV. CONCLUSION

WHEREFORE, and for the foregoing reasons, Plaintiffs respectfully submit that Defendants'

Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

By: */s/* Jacob Phillips
Jacob L. Phillips, Esq.
FBN: 0120130
Edmund A. Normand, Esq.
FBN: 865590
Normand PLLC
P.O. Box 1400036
Orlando, FL 32814-0036
Ed@ednormand.com
jacob.phillips@normandpllc.com

*/s/* Christopher J. Lynch
Christopher J. Lynch
FBN: 331041
6915 Red Road, Suite 208
Coral Gables, FL 33143
clynch@hunterlynchlaw.com
lmartinez@hunterlynchlaw.com

Richard D. Daly, Esq.
TBN: 00796429
John Scott Black
TBN: 24012292
Daly & Black, P.C.
2211 Norfolk Street, Suite 800
Houston, TX 77098
Ecfs@dalyblack.com
Rdaly@dalyblack.com
Jblack@dalyblack.com

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 3rd day of February, 2020 a true and correct copy of the foregoing was delivered to the following counsel of record via E-service.

Roger D. Higgins
TBN: 09601500
Mark J. Jung
TBN: 24012934
Thompson, Coe, Cousins & Irons, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, TX 75201-2832
Tel: 214-871-8229
Fax: 214-871-8209
rhiggins@thompsoncoe.com
mjung@thompsoncoe.com