IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANDREA CODY, TRAEVION LOVE, BRITTANY BURK, and DANA WHITFIELD, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs,*<br><br>v.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY and ALLSTATE COUNTY MUTUAL INSURANCE COMPANY,<br><br>    *Defendants.* | CASE NO. 3:19-cv-1935-K<br><br>CLASS ACTION |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12(b)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendants ("Allstate") file this Reply and Brief in Support of Their Rule 12(b)(6) Motion to Dismiss ("Reply").

### I.   INTRODUCTION

Plaintiffs contend that the actual cash value ("ACV") includes "sales tax and title fees, registration fees, safety inspection fees and emission inspection fees[.]" Plaintiffs' Response ("Resp.") 1. Their arguments fail. The unambiguous policy language under Texas law establishes that ACV for a total-loss automobile is its fair market value (as personalty with an ascertainable market value), and is not—as Plaintiffs contend—replacement costs, including sales tax and fees.

The policy is clear on its face under Texas law. *P. Bordages-Account B., L.P. v. Air Prods., L.P.*, 369 F. Supp. 860, 866 (E.D. Tex. 2004). Plaintiffs' arguments strive to create confusion by referring to unrelated cases involving distinguishable policy coverage and policy language and other states' laws. If any Texas law supported their position that total-loss

1

automobile coverage under this policy includes tax and fees, Plaintiffs certainly would have cited to it. But no Texas law supports their contention. As a result, their claims should be dismissed.

## II.     ARGUMENT

### A.  Plaintiffs' argument that Texas law "firmly establishe[s]" that the ACV of a total loss automobile "equals replacement cost minus depreciation" is clearly incorrect

#### i.  Plaintiffs unsuccessfully assert that Allstate has a *"burden of proof placed on them"* in the contract interpretation issue that governs the Motion to Dismiss

Plaintiffs argue that Allstate "cannot meet a burden of proof placed on them at the pleadings stage of the litigation" and that "Allstate must demonstrate that Plaintiffs seek amounts exceeding the vehicle's ACV." Resp. 5–6, 11. But the contractual interpretation issue before the Court in this Motion to Dismiss does not involve a burden of proof or require evidentiary support, but instead is a legal issue for the Court to properly decide at the motion to dismiss stage.[1] Plaintiffs' cited case—*Ayoub v. Chubb Lloyds Ins. Co.*, 641 Fed. Appx. 303, 307 (5th Cir. 2016)—concerns the factual issue of whether particular damage was covered or excluded given the circumstances under a policy. In contrast, this case involves whether, as matter of law, the meaning of the unambiguous policy language under Texas law defeats Plaintiffs' claims. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Sonnier*, 509 F.3d at 676.

#### ii.  Texas law is firmly established that ACV for a total-loss vehicle is market value with no reference to replacement cost

Texas courts have consistently recognized the distinction in calculating ACV for personal property that has a market value—such as Plaintiffs' total-loss vehicles—and other destroyed property that lacks a market value. *See Crisp v. Sec. Nat'l Ins. Co.*, 369 S.W.2d 326, 328–30 (Tex. 1963). Plaintiffs however, in striving to prove Allstate must pay sales tax and fees,

---

[1] *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 674-77 (5th Cir. 2007).

inaccurately conflate Texas courts' purposeful distinction in the ACV measurement for different types of property into one standard: that ACV "equates" to replacement cost minus depreciation.[2]

"Actual cash value for marketable chattels, for which market value can be determined, is market value."[3] *Mew v. J & C Galleries, Inc.*, 564 S.W.2d 377, 377 (Tex. 1978); *Hartford Ins. Co. v. Jiminez*, 814 S.W.2d 551, 552 (Tex. App.—Houston [1st Dist.] 1991, no writ) (for total-loss automobile, "[t]he measure of damages to property that is totally destroyed is its reasonable market value when destroyed"); *Agricultural Workers Mut. Auto. Ins. Co. v. Dawson*, 424 S.W.2d 643, 645 (Tex. App.—Tyler 1968, no writ) (if car is a "total loss" then "the insured is entitled to the 'actual cash value' of the car, measured by the difference in the car's market value immediately before and immediately after the collision"). "When the market value of such property cannot be determined, or it is inadequate, then resort may be had to other factors to determine actual cash value."[4] *Mew*, 564 S.W.2d at 377. In *Crisp*, the Texas Supreme Court held that "clothing and personal effects have no market value in the ordinary meaning of that term" and—significantly for this case—"replacement costs do not afford a fair test" because "this measure might represent an economic gain to the insured quite aside from the difficulty of application and proof" in light of obsolescence, change of style, or fashion. 369 S.W.2d at 328–

---

[2] Resp. 5-6. Further undermining Plaintiffs' position, Plaintiffs' proposed "replacement cost minus depreciation" model for ACV contravenes their pleading for the full amount of tax and fees. They do not propose to depreciate sales tax or fees, which a replacement cost minus depreciation model requires. Am. Complaint ¶ 44; *Tolar v. Allstate Tex. Lloyd's Co.*, 772 F. Supp. 2d 825, 831–32 (N.D. Tex. 2011) (not requiring full payment of sales tax on top of ACV).
[3] *Waples-Platter Co. v. Comm. Standard Ins. Co.*, 294 S.W.2d 375, 376–77 (Tex. 1956); *Tex. Farm Bur. Mut. Ins. Co. v. Wilde*, 385 S.W.3d 733, 737–38 (Tex. App.—El Paso 2012, no pet.); *see Lowery v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 805 F.3d 204, 210 (5th Cir. 2015) (in Texas, "fair market value" "is considered the leading indicator" of ACV).
[4] 12 COUCH ON INSURANCE § 175.24 ("[T]here is a priority of rules to determine actual cash value as follows, (1) where market value is easily determined, actual cash value is market value, (2) if there is no market value, replacement or reproduction cost may be used, (3) failing the other two tests, any evidence tending to formulate a correct estimate of value may be used.").

30. As a result, the measure of recovery for clothing and personal effects is the "actual cash value or worth of articles to the owner." *Id.* at 328.

Plaintiffs do not contend that their total-loss automobiles do not have a market value. Instead, they improperly disregard the clear method to determine ACV for personalty with a market value under Texas law (which is cash market value with no reference to replacement costs) and inaccurately contend that "ACV of the total loss insured vehicle[s] includes costs which will necessarily be incurred in replacing the vehicle." Resp. 10. In their effort to promote the inapplicable replacement cost measurement, Plaintiffs cite cases—*Ghoman*, *Tolar*, and *Greenspoint*—which Plaintiffs claim are "directly on point." Resp. 7. But they involve the distinctive ACV measurement that applies to real property—which is distinct from valuation of personalty (such as a total-loss automobile) which has a readily accessible market value.[5]

For example, *Ghoman v. New Hampshire Insurance Co.*, 159 F. Supp. 2d 928, 930 (N.D. Tex. 2001), concerned damages to a Howard Johnson hotel under a commercial property insurance policy. In determining the ACV or fair market value for this real property claim, the court looked to *Religious of the Sacred Heart of Texas v. City of Houston*, 836 S.W.2d 606, 615–16 (Tex. 1992), which concerned the valuation of condemned real property. *Ghoman*, 159 F. Supp. 2d 934; *Sacred Heart* described that in *The Appraisal of Real Estate* by the American Institute of Real Estate Appraisers, "an appraiser studies a property from three different viewpoints": 1. comparable sales, 2. the cost to repair or replace less depreciation, or 3. the

---

[5] Strangely, Plaintiffs criticize Allstate for "[c]onspicuously" not citing *Ghoman*, *Greenspoint*, and *Tolar* in its amended Motion to Dismiss. Resp. 7. Allstate's originally-filed Motion distinguished *Ghoman* and *Tolar*, which Plaintiffs cited in their original complaint "in an attempt to support their argument that actual cash value means replacement cost less depreciation." Original Motion 14–15; *see* Complaint 5. Plaintiffs omitted citation to *Ghoman* and *Tolar* in their amended complaint. *See* Plaintiffs' Am. Complaint. Because Plaintiffs no longer relied on *Ghoman* and *Tolar*, Allstate did not address those cases in its Amended Motion.

income capitalization approach. 836 S.W.2d at 615–16. *Ghoman* relied on this three-part test from *Sacred Heart* to determine ACV for the real property at issue. 159 F. Supp. 2d at 934. But "[t]he Texas Supreme Court's discussion regarding market value" in *Sacred Heart* "was only in relation to condemnation—there is no indication its holding was intended to apply to personal property, such as automobiles."[6] As recently concluded in *Singleton*, "the Court is unpersuaded that a rule of law created for unique or special property with a limited market should be applied to the automobile market, which has a large market of comparable sales." *Id.* at p. 8.

Similarly, both *Greenspoint* and *Tolar* concern insured real property—and thus the ACV valuation methods described by *Ghoman*—rather than a total-loss vehicle that has a readily accessible market value. *Greenspoint Investors, Ltd. v. Travelers Lloyds Insurance Co.*, No. H-10-4057, 2015 WL 965730, at *1, 3 (S.D. Tex. Mar. 3, 2015), involved consideration of whether "ACV may be determined without consideration of the actual cost of a repair" under a policy insuring an office building. The replacement cost policy provided "the option to elect either replacement cost or actual cash value ("ACV") for damage to the insured property if it chose not to replace or repair the damaged property." *Id.* at *4. The *Greenspoint* court relied on *Ghoman*—and noted that *Ghoman* relied on *Sacred Heart* (the condemned real property case)—to conclude that calculating ACV, which is fair market value, "may be determined by looking at comparable sales, income capitalization, or the cost of repair or replacement less depreciation." *Id.* The court noted, "[t]he *Ghoman* court applied the third option, 'repair or replacement costs less depreciation' in determining the amount of the insured's loss." *Id.* Likewise, *Tolar*, 772 F. Supp. 2d at 828, concerned coverage under a homeowner's insurance policy. In this real property case,

---

[6] *Singleton v. Elephant Ins. Co.*, No. 6:19-cv-00200-ADA, at p. 7 (W.D. Tex. May 10, 2019) (granting rule 12(b)(6) motion to dismiss on insureds' claims that ACV included sales tax and fees under policy and Texas law), *appeal* docketed, No. 19-50470 (5th Cir. May 23, 2019).

the court cited to *Ghoman* for the proposition that "Texas courts have defined the term 'actual cash value' as 'repair or replacement costs less depreciation.'" *Id.* at 831.[7] Clearly, these cases provide no basis to detract from long-standing Texas law concerning the valuation of personalty.

Plaintiffs inaptly argue that Allstate's cited authorities "do not address" whether replacement costs are included in the ACV for a total-loss vehicle (Resp. 9);[8] Allstate's authorities clearly delineate that only the actual cash market value is included and replacement costs are irrelevant.[9]

Plaintiffs reflect their misconstruction of Texas law by stating that the determinative "question is not how ACV is literally defined." (Resp. 10) Texas law clearly dictates that the definition of ACV for various types of property (personalty with a market value, personal goods, or real estate) varies and determines whether a "replacement cost" definition applies. All of Plaintiffs' cited cases support this.[10] Under Texas law, the ACV for a total-loss automobile is the fair market value of the vehicle (and replacement costs do not apply *because* there is a market value for the vehicle). Consequently, the answer to what Plaintiffs claim is the central question—whether, for a total-loss automobile, "ACV is interpreted to include consideration of necessary replacement costs" (Resp. 10)—is clearly no.

---

[7] *Triple S Props. Inc. v. St. Paul Surplus Lines Ins. Co.*, No. 3:08-CV-796-O, 2010 WL 3911422, at *6 (N.D. Tex. 2010), is also inapplicable, involving "the accepted real estate appraisal methods for establishing the fair market value of real estate," citing *Ghoman* and *Sacred Heart*.

[8] Further, Plaintiffs incongruously state that some of Allstate's authorities do not concern total-loss valuation (Resp. 9–10) when Allstate cited them for other legal principles, including fair market value's legal definition and coverage under unambiguous policy terms. Motion 11, 13.

[9] *See also Queen Ins. Co. v. Dominquez*, 426 S.W.2d 286, 288 (Tex. Civ. App.—San Antonio 1968), *ref'd on other grounds*, 434 S.W.2d 340 (Tex. 1968); *Stuyvesant Ins. Co. v. Driskill*, 244 S.W.2d 291, 292–93 (Tex. Civ. App.—Fort Worth 1951, no writ).

[10] Plaintiffs cite *Adams v. State Farm Mut. Auto. Ins. Co.*, 264 S.W.3d 424, 428–29 (Tex. App.—Dallas 2008, pet. denied), as upholding a jury's ACV determination "which included" taxes and fees, but *Adams* instead held a settlement document including taxes and fees was "some evidence" of a car's fair market value.

### iii.     Plaintiffs' cited out-of-state cases and extrinsic evidence are inapplicable

Plaintiffs' cited cases from other states involve markedly distinguishable law from Texas and distinguishable policy language.[11] Further, Plaintiffs provide no cited authority concerning Texas Department of Insurance supposed definitions. (Resp. 9).

### B.     Plaintiffs' argument that they are entitled to recover sales tax and fees as replacement costs even if ACV equates to market value lacks merit

Plaintiffs incorrectly propose that the Texas Transportation Code and Texas Tax Code statutes Allstate cites (Motion 14) do not apply because the (real estate ACV) cases *Ghoman*, *Tolar*, and *Triple S* dictate "consideration of replacement cost." Resp. 11. As discussed above, these inapposite cases do not pertain to the calculation of ACV for a total-loss vehicle.

Further, Plaintiffs cite to the "well-functioning market" language in *Lowery v. Fidelity National Property & Casualty Insurance Co.*, 805 F.3d 204, 210 (5th Cir. 2015). Resp. 11–12. But *Lowery* supports Allstate's argument because it concerns replacement cost valuation of the value "of a residential property[.]" *Id.* at 210 (concerning federal flood insurance program under federal common law and broad evidence rule). In addition, Plaintiffs assertion that the legal definition of ACV for a total-loss vehicle is a "factual question" fails under clear Texas law.[12] Likewise, Plaintiffs' assertion that Allstate must establish which valuation method used in the

---

[11] *See, e.g., Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) (mobile home policy ACV as "cost to repair or replace property with new materials of like kind and quality, less allowance for physical deterioration and depreciation"); *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 WL 134169, at *3 (S.D. Ohio Jan. 13, 2020) (in Ohio, ACV defined "as either market value at the time of the accident or the replacement cost of the vehicle minus depreciation" and Ohio statute requiring replacement cost for total-loss vehicle); *Carter v. Amica Mut. Ins. Co.*, No. 17-cv-02156-RM, 2018 WL 3093320, at *7 (D. Colo. June 22, 2018), *report and recommendation adopted*, 2018 WL 4368668 (D. Colo. July 11, 2018) (Colorado statute requiring insurer to pay fees related to total loss vehicle); *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-Civ, 2018 WL 3412852, at *3 (S.D. Fla. June 14, 2018) (ACV in policy as "replacement cost of the auto" minus "depreciation or betterment"); *Lukes v. Am. Family Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1015 (D. Ariz. 2006) (ACV under policy as "cost to repair or replace covered property" minus "physical deterioration and depreciation").

[12] *See Waples*, 294 S.W.2d at 376–77; *Jiminez*, 814 S.W.2d at 552; *Dawson*, 424 S.W.2d at 645.

real estate appraisal context applies (Resp. 12) also fails; such real estate appraisal evaluation methods are inapposite to the ACV for personal property.

**C.     Clear Texas authority refutes Plaintiffs' "indemnification" arguments**

As Allstate argued in its Motion (pp. 16–18), Plaintiffs' argument that an ACV payment under the policy should include sales tax and fees because "payment of ACV requires indemnity" (Resp. 14–15) misconstrues Texas law. First, Plaintiffs' policy clearly distinguishes "actual cash value" and cost to "repair" or "replace." *See* Motion 9–10, 16–18. Texas courts have refused to conflate value and replacement.[13] Instead of focusing on the policy language under Texas law, Plaintiffs argue that ACV is "pure indemnity" and Allstate did not "promis[e] less than ACV and thus less than indemnity." Resp. 14, 16. This entirely contravenes the terms of the policy and Texas law, which provide that ACV of a total loss vehicle (which has a readily ascertainable market value) is its cash market value—and replacement costs do not play a part.

Further, Plaintiffs' cited "indemnification" cases concern the "indemnification" of the insured through the value the insured receives for insured property—not appending extra categories of costs (like taxes and fees) not contemplated by the policy terms. Plaintiffs' authorities repeatedly concern the distinction between valuation (and thus recovery) under replacement cost policies versus ACV policies or avoiding paying double recovery.[14] Plaintiffs cite no Texas authorities supporting its argument that ACV is "pure indemnity."[15]

Further, Plaintiffs misapply *Schafer*. They argue that *Schaefer* confirms their position that

---

[13] *Schaefer*, 124 S.W.3d at 161–62; *Carlton v. Trinity Univ. Ins. Co.*, 32 S.W.3d 454, 464 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

[14] *See Lowery*, 805 F.3d at 207–08; *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 521 (5th Cir. 2010); *Safeco Ins. Co. of Indiana v. Gregory*, No. A-14-CA-074-SS, 2014 WL 4103920, at *2, 4 (W.D. Tex. Aug. 18, 2014).

[15] Only one Texas case refers to the term "pure indemnity," and does so quoting an Indiana Supreme Court decision comparing ACV policies with replacement cost policies. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 292 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) (quoting *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 352 (Ind. 1982)).

they should recover taxes and fees for their total-loss vehicles because *Schaefer* "(at least implicitly) confirms" that "ACV is 'pure indemnity.'" Resp. 14–16. But *Schaefer* concluded that to read "repair or replace" language in the policy to include diminished value—as Schaefer argued—would render meaningless the language that the insured is entitled to the "lesser of" ACV or the amount necessary to repair or replace the vehicle. 124 S.W.3d at 158. The *Shaefer* court did not equate "actual cash value" with "indemnity" as Plaintiffs allege. Rather, the Court's only holding with respect to indemnity is—as stated in Allstate's Motion (p. 17)—that first party collision coverage, instead of indemnifying against all loss, is "expressly bounded by the policy's Limit of Liability and Payment of Loss provisions." *Id.* at 161.

**D.    The fees Plaintiffs seek are not "part of the vehicle's insurable value"**

As Allstate argued with supporting statutory authorities in its Motion (pp. 18–21), the fees Plaintiffs seek are not—as Plaintiffs assert—"part of the vehicle's insurable value[.]" Resp. 17. First, because the ACV measurement for a total-loss vehicle under Texas law is not replacement cost, Plaintiffs' argument that these fees are part of ACV because they are "costs necessary to replace the property" (Resp. 17) fails.[16] Also, Plaintiffs incorrectly contend that Allstate "argues only that the statutes in question do not reference the *purchase* of a vehicle." Resp. 17. Instead, Allstate clearly established that the statutory provisions governing these fees do not concern vehicle valuation, purchase, or the "purchased replacement of a total loss vehicle." Motion 18–19; Am. Complaint ¶30. Further, the fact that Allstate's pays some Plaintiffs' fees as a business policy but not as a legal requirement is irrelevant for this Motion to Dismiss because payment alone does not create coverage where none exists. Motion 12–13 n.9.

**E.    The policy interpretation issue in this case is inherently a legal issue properly decided by a 12(b)(6) motion to dismiss**

---

[16] Plaintiffs cite inapplicable authority: *Murmur Corp. v. Bd. of Adjustment of City of Dallas*, 718 S.W.2d 790, 795–96 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (concerning a city ordinance).

9

Plaintiffs contend that "dismissal at this stage of the pleadings would be inappropriate" because "replacement costs" are "a question for the factfinder." Resp. 18. But the question is not—as in Plaintiffs' cited authority, *Ayoub*, 641 Fed. Appx. at 310–11—what evidence is sufficient to establish ACV for personal effects with no market value. Rather, the issue before the Court is interpretation of the policy terms concerning ACV and whether they include sales tax and fees. Such an interpretation of insurance policy terms is clearly a matter of law properly decided at the motion to dismiss stage. *See Sonnier*, 509 F.3d at 674–77. Further, Plaintiffs incongruously argue that a court "must resolve all ambiguities in the contract in [p]laintiffs' favor" (Resp. 19) and yet assert that "Texas law unambiguously defines ACV".[17] Resp. 4.

**F.    Because Allstate has established that Plaintiffs' complaint fails "to state a claim upon which relief can be granted," rule 12(b)(6) requires dismissal of the case**

Plaintiffs conclusively state that, "[b]ecause the contract claim should not be dismissed," "the Prompt Payment Act follows form, and should also not be dismissed." Resp. 16–17. But because the unambiguous terms of the policy clearly establish that (1) Allstate did not breach the policy contract and (2) as a result, did not violate the prompt payment of claims statute, Plaintiffs' complaint fails "to state a claim upon which relief can be granted."[18] FED. R. CIV. .P. 12(b)(6). As a result, Plaintiffs' complaint must be dismissed.

### III. PRAYER

Based upon the foregoing, Allstate respectfully requests that the Court grant its Motion to Dismiss, dismiss each of Plaintiffs' claims with prejudice, and grant such other and further relief, at law or equity, to which it may show itself to be justly entitled.

---

[17] Further, Plaintiffs' claim "market value is itself a question of fact" (Resp. 19) but their authorities concern the distinguishable issue that the *amount of* market value is a question of fact.
[18] *Singleton.*, No. 6:19-cv-00200-ADA, did not, as Plaintiffs assert, hold that "'paying a claim' in the first-party context is *ipso facto* indemnity[.]" Resp. 17 n.5. Instead, *Singleton* stated, in accord with Texas law, the duty to indemnify only requires payment of claims covered by the policy. *Singleton*, at *8 n.3; *Schaefer*, 124 S.W.3d at 161; *Carlton*, 32 S.W.3d at 465.

Respectfully submitted,

*/s/ Roger D. Higgins*
Roger D. Higgins
Texas Bar No. 09601500
Mark J. Jung
Texas Bar No. 24012934
Elizabeth Lee Thompson
Texas Bar Number 00788290
Ashley B. Pedigo
Texas Bar No. 24095731
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8200
Facsimile: (214) 871-8209
E-mail: rhiggins@thompsoncoe.com
E-mail: mjung@thompsoncoe.com
E-mail: lthompson@thompsoncoe.com
E-mail: apedigo@thompsoncoe.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

   This is to certify that on this 18th day of February, 2020, a true and correct copy of the foregoing was delivered to the following counsel of record via E-service:

Richard D. Daly
John Scott Black
DALY & BLACK, P.C.
2211 Norfolk Street, Suite 800
Houston, TX 77098
T: (713) 655-1405
F: (713) 655-1587
ecfs@dalyblack.com
rdaly@dalyblack.com
jblack@dalyblack.com

Angelica Gentile
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 1205
Miami, FL 33132
T: (305) 479-2299
F: (786) 623-0915
agentile@shamisgentile.com

Thomas Hamrick
LAW OFFICE OF THOMAS W. HAMRICK
5665 Arapaho, Bldg. 1123
Dallas, Texas 75248
T: (214) 396-7676
F: (214) 785-2959
hamricklaw@gmail.com

Jacob L. Phillips (*pro hac vice*)
Edmund A. Normand (*pro hac vice*)
NORMAND PLLC
P.O. Box 1400036
Orlando, FL 32814-0036
T: (407) 603-6031
F: (888) 974-2175
ed@normandpllc.com
jacob.phillips@normandpllc.com
service@normandpllc.com

Christopher J. Lynch, P.A. (pro hac vice)
HUNTER & LYNCH
6915 Red Road, Suite 208
Coral Gables, Florida 33143
T: (305) 443-6200
F: (305) 443-6204
Clynch@hunterlynchlaw.com
Lmartinez@hunterlynchlaw.com

                */s/ Roger D. Higgins*
                Roger D. Higgins