IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANDREA CODY, TRAEVION LOVE,
BRITTANY BURK, and DANA WHITFIELD
individually and on behalf of all others
similarly situated,

  Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY and
ALLSTATE COUNTY MUTUAL
INSURANCE COMPANY,

  Defendants.
_____ /

CASE NO.:3:19-cv-1935

CLASS ACTION

## PLAINTIFFS' RESPONSE TO COURT ORDER (DOC. 38)

Comes now the Plaintiffs and hereby file this supplemental brief pursuant to this Court's Order, Doc. 38, addressing the recent opinion issued by the Fifth Circuit Court of Appeals, *Singleton v. Elephant Ins. Co.*, 2020 U.S. App. LEXIS 8541 (5th Cir. Mar. 18, 2020).

### I.   THE *SINGLETON* OPINION

The Singleton opinion, like this case, addressed the actual cash value ("ACV") of total-loss vehicles, including whether, under the policy at issue in that case, whether sales tax and/or transfer fees are included in a vehicle's ACV. *Id*. Without repeating previous briefing on Defendants' Motion to Dismiss, quick background on ACV is helpful.

In Texas, ACV is generally synonymous with market value. *See Great Texas County Mutual Insurance Co. v. Lewis*, 979 S.W.2d 72, 74 (Tex. App.—Austin 1998, no pet.). Market

value, in turn, can be measured in one of three ways – income capitalization, comparable sales, or replacement cost less depreciation. *See, e.g.*, *Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 928, 934 (N.D. Tex. 2001) (citing *Religious of the Sacred Heart of Texas v. City of Houston*, 836 S.W.2d 606, 615-16 (Tex. 1992). If replacement cost less depreciation is utilized, it includes costs reasonably necessary to replace the property. *See Greenspoint Investors, Ltd. V. Travelers Lloyds Ins. Co.*, 2015 U.S. Dist. LEXIS 25301 at 12-13 (S.D.Tex. March 3, 2015) ("[T]he linchpin and calculation of replacement costs appears to be whether the challenged cost is reasonably likely to be incurred or not."); *Tolar v. Allstate Tex. Lloyds Co.*, 772 F.Supp.2d 825, 831 (N.D.Tex. 2011) ('"Texas courts have defined the term 'actual cash value' as 'repair or replacement costs less depreciation'" and Texas law unambiguously...defines 'replacement costs as 'any cost that an insured is reasonably likely to occur in repairing or replacing a covered loss.'"). The question, then, is which methodology for calculating market value applies when the context is an ACV policy?

The *practice* of most auto insureds in Texas is replacement cost less depreciation, and includes Sales Tax and (at least some) Transfer Fees, see Exh. A (Phillips Decl. at ¶¶4-5 and accompanying attachments), which is consistent with the Texas Department of Insurance's guidance that ACV should generally be measured as replacement cost less depreciation.[1] But what is required of course depends on specific policy language. Some policies specify how ACV or market value will be measured, while others do not. *See, e.g.*, *Triple S Props. v. St. Paul Surplus Lines Ins. Co.*, 2010 U.S. Dist. LEXIS 106653, at *17 (N.D. Tex. Oct. 5, 2010). Obviously, to the extent the Policy sets forth the way ACV will be measured, the policy controls.

---

[1] http://www.helpinsure.com/auto/autoglossary.html (Glossary of Auto Insurance Terms) [last accessed April 3, 2020).

The Texas Supreme Court addressed one common way policies define or explain ACV, and addressed how ACV should be measured under such formulation:

> "The limitation that 'liability herein shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation' may be construed as meaning the price of new property, as of the time of loss, of the same material and quality as the kind destroyed less the amount that the destroyed property would have depreciated over the period of time owned and used by the insured."

-*Crisp v. Security Nat'l Ins. Co.*, 369 S.W.2d 326, 330 (Tex. 1963).

This comports with the Texas Department of Insurance, which provides a standard form policy with a limitation of liability of the "actual cash value" of the property, Phillips Decl. at ¶6, and asserts that, consistent with *Crisp*, ACV in turn means "replacement cost less depreciation," *supra* fn. 1.

To the extent a policy defines ACV as set forth in *Crisp*, the Texas Supreme Court's holding is binding. *See, e.g.*, *Aurelius Capital Master, Ltd. v. Acosta*, 2014 U.S. Dist. LEXIS 151201, at *8 (N.D. Tex. Jan. 28, 2014) ("Pronouncements by a state's highest court are binding on federal courts applying that state's law.") (citations omitted). The *Elephant* policy limited liability to ACV, and asserted that "[ACV] is determined by the market value, age and condition" of the vehicle at the time of the accident. *Singleton*, 2020 U.S. App. LEXIS 8541, at *5. The Fifth Circuit apparently found this definition sufficient to distinguish *Crisp* and the Texas Department's standard form policy, and held the carrier properly utilized comparable sales methodology, rather than replacement cost less depreciation, which would not include taxes and fees. *See id*. at fn. 1.

If Allstate's Policy is like the policy language addressed in *Crisp*, this Court is presumably bound by the Texas Supreme Court. If it is like the policy language addressed in *Singleton*, this Court is presumably bound by the Fifth Circuit's interpretation. Thus, the question is whether

Defendants' limitation on liability is closer to "the [ACV] of the property at the time of loss, ascertained with proper deduction for depreciation", in which case *Crisp* applies, or whether it is instead closer to "actual cash value[, which] is determined by the market value, age and condition", in which case *Singleton* applies.

## II.   APPLICATION TO THIS CASE

As an initial matter, it is worth noting that, as set forth in Plaintiffs' Motion to Amend (which will be subsequently filed), if this Court finds the answer to the aforementioned question is *Singleton*, such a finding would be *more* beneficial to Plaintiffs than the alternative. As the Motion to Amend explains, Defendants do not use comparable sales as the basis for calculating ACV – in Plaintiff Love's case, for example, the "comparable sales" method would have resulted in an approximately $1100 increase.[2] Plaintiffs submit that this Court should grant the Motion to Amend rather than ruling on the pending Motion to Dismiss.

However, while the "comparable sales" interpretation would benefit Plaintiffs, in the interest of intellectual honesty, Plaintiffs did not seek application of such methodology precisely because they believe the proper interpretation of the Policy aligns with the policy language addressed in *Crisp*, which is why Plaintiffs' Complaint alleged the lesser "costs less depreciation" method rather than the higher "comparable sales" method. To see why, below are the three limitations on liability:

- *Crisp* policy: limitation on liability is "the [ACV] of the property at the time of loss, ascertained with proper deduction for depreciation";

---

[2] Under the proposed amended Complaint, then, Plaintiffs bring three claims: one claim for a declaratory judgment and two claims that depend on whether this Court interprets the Policy as aligned with the *Singleton* policy (comparable sales) or the *Crisp* policy (replacement less depreciation) or both.

- *Singleton* policy: limitation on liability is the "[ACV] of…the property" which is "determined by market value, age and condition";
- ALLSTATE policy: "the [ACV] of the property at the time of loss" (Exhibit B, ALLSTATE Policy (000054-74) at 000069).

It is also worth noting the policy at issue in *Singleton* is extremely rare in that the "Payment of Loss" provision made no promise to pay for loss at all, let alone to repair or replace the property or to pay in money the amount necessary to do so. Phillips Decl. at ¶¶7-8 (citing to Elephant Insurance Co.'s policy). Instead, the policy's Payment of Loss provision asserted only what would happen if stolen property was returned and allowed Elephant Insurance Co. to pay a lienholder directly rather than paying the insured. *Id*. However, the overwhelming majority of auto policies, including Defendants', and including the Texas standard policy (which the Texas Department of Insurance then asserts is measured as replacement cost less depreciation), have a "Payment for Loss" provision that promises to pay for loss by replacing the damaged property or paying the amount necessary to do so, which is then read in light of a limitation on liability. *See, e.g.*, ALLSTATE Policy at 000062-63 (Payment of Loss provision). In the event of a total loss, then, Defendants promised to replace the vehicle or pay to do so in money (Payment of Loss), subject to the limitation of ACV (Limit on Liability provision). The *Singleton* policy had no such "Payment of Loss" provision promising to replace the vehicle or to pay to do so in money – it only included a limitation on liability of ACV, determined by market value, age, and condition.

Plaintiff submits that the ALLSTATE policy is the same as *Crisp*, absent the second clause. However, read in conjunction with the Payment of Loss provision – promising to replace the property to pay to do so in money – and the second limitation on liability – which is repair or

5

replacement clearly of like kind and quality (i.e., depreciation is irrelevant)[3] – the ability to deduct depreciation in measuring ACV is strongly implied. Reading ACV to be measured as the replacement cost less depreciation, then, is consistent with *Crisp* and with the Texas Department of Insurance. This is particularly important given the ALLSTATE policy language in the Payment of Loss provision and the Limit on Liability provision is precisely the same as the Texas Department of Insurance's standard form policy, Phillips Decl. at ¶6, which the Department in turn asserts should be measured as replacement cost less depreciation, *see supra*, fn. 1. The policy in *Singleton*, by contrast, significantly changed the Texas standard form policy by eliminating the relevant "Payment of Loss" language entirely, while also changing the applicable ACV language.

Thus, Plaintiffs submit that the *Singleton* opinion is inapplicable here. Had Defendants chosen to eliminate the Payment of Loss language promising to replace damaged property or pay the money equivalent to do so, and had Defendants changed the standard ACV language, then perhaps *Crisp* and the Texas Department of Insurance's prescriptions would be irrelevant, as the Fifth Circuit determined in *Singleton*. Unlike the carrier in *Singleton*, however, Defendants chose not to do so, and thus it incontrovertibly remains reasonable to interpret Defendants' policy in

---

[3] "Like kind and quality" refers to functionality, not value, and generally applies in the context of *partial* losses (including replacement of component parts, i.e. doors/bumpers/etc.) and not total losses. *See, e.g.*, *New Appelman On Insurance Law Library Edition*, Vol. 6 § 62.08[1][c] ("Rather than pay [ACV], an insurer has the option of paying the amount necessary to repair the damage or replace the damaged parts with property of like kind and quality" and applies "when the vehicle is not a total loss."); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158-59 (Tex. 2003) (collecting cases and explaining that "repair or replace…with like kind and quality" limitations on liability refer to functionality and use and are unrelated to conception of value). Thus, the limitation on liability, read in conjunction, means that if a loss occurs, ALLSTATE repairs the vehicle itself – or pays the cost to do so, which the insured presumably then passes along to the repair facility – unless the cost to do so exceeds the pre-loss value of the vehicle, in which case it is cheaper (and more sensible) for ALLSTATE to replace the vehicle (or pay in money the cost to do so), Policy at 000062-63, subject to the limitation of ACV, which would allow ALLSTATE to deduct for depreciation.

precisely the way it was interpreted in *Crisp* and in precisely the way prescribed by the Texas Department of Insurance, neither of which can be said to be unreasonable.

Dated this 6th day of April, 2020.

                                               Respectfully submitted,

By:

                */s/ Jacob Phillips*
                Jacob L. Phillips
                (admitted *pro hac vice*)
                Edmund A. Normand
                (admitted *pro hac vice*)
                **Normand PLLC**
                Post Office Box 1400036
                Orlando, FL 32814-0036
                T: (407) 603-6031
                F: (888) 974-2175
                ed@normandpllc.com
                jacob.phillips@normandpllc.com
                service@normandpllc.com

                */s/ Thomas Hamrick*
                Thomas Hamrick
                TBN 08879025
                **Law Office of Thomas Hamrick**
                5665 Arapaho, Bldg. 1123
                Dallas, TX 75248
                Tel: (214) 396-7676
                Fax: (214) 785-2959
                hamricklaw@gmail.com

                Richard D. Daly
                TBN 00796429
                John Scott Black
                TBN 24012292
                **Daly & Black, P.C.**
                2211 Norfolk Street, Suite 800
                Houston, TX 77098
                T: (713) 655-1405
                F: (713) 655-1587
                ecfs@dalyblack.com
                rdaly@dalyblack.com
                jblack@dalyblack.com

>Christopher J. Lynch
>(admitted *pro hac vice*)
>**Christopher J. Lynch, P.A.**
>6915 Red Road, Suite 208
>Coral Gables, Florida 33143
>T:  (305) 443-6200
>F:  (305) 443-6204
>Clynch@hunterlynchlaw.com
>Lmartinez@hunterlynchlaw.com
>
>Angelica Gentile
>TBN 24112322
>**Shamis & Gentile P.A.**
>14 NE 1st Avenue, Suite 400
>Miami, FL 33132
>Tel:  (305) 479-2299
>Fax: (786) 623-0915
>agentile@shamisgentile.com

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of April, 2020, a true and correct copy of the foregoing was delivered via electronic service to all parties on the attached Service List.

>*/s/ Jacob Phillips*
>Jacob L. Phillips

## SERVICE LIST

Roger D. Higgins, Esq.
Mark J. Jung, Esq.
Elizabeth Lee Thompson, Esq.
Ashley B. Pedigo, Esq.
**Thompson, Coe, Cousins & Irons, LLP**
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
E-mail: rhiggins@thompsoncoe.com
E-mail: mjung@thompsoncoe.com
E-mail: lthompson@thompsoncoe.com
E-mail: apedigo@thompsoncoe.com

*Counsel for Defendants Allstate Fire & Casualty Company and Allstate County Mutual Insurance Company*