IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDREA CODY, TRAEVION LOVE, BRITTANY BURK, and DANA WHITEFIELD, individually and on behalf of all others similarly situated, | §<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Civil Action No. 3:19-CV-1935-K |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY and ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, | §<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Allstate Fire and Casualty Insurance Company and Allstate County Mutual Insurance Company's Second Amended Rule 12(b)(6) Motion to Dismiss and Motion to Strike Class Allegations ("Motion") (Doc. No. 46). The Court has carefully considered the Motion, the response, the reply, the supporting appendix, the applicable law, and the relevant parts of the record. The Court finds Plaintiffs failed to state a claim for breach of contract or violation of the Prompt Payment Act upon which relief may be granted. The Court also finds Plaintiffs' declaratory judgment claim should be dismissed as there is no viable substantive claim

ORDER – PAGE 1

and, alternatively, the Court declines to exercise its discretion over the declaratory judgment claim.  Therefore, the Court **GRANTS** Defendants' Motion to Dismiss and hereby **dismisses** all of Plaintiffs' claims.  In light of Plaintiffs' claims being dismissed, the Court need not reach the Motion to Strike the Class Allegations.

## I.      Factual and Procedural Background

Plaintiffs Andrea Cody, Traevion Love, Brittany Burk, and Dana Whitfield (collectively, "Plaintiffs") were insured under separate "but materially identical" automobile polices (collectively, the "Policy") issued by Defendants Allstate Fire and Casualty Insurance Company ("Allstate Fire") or Allstate County Mutual Insurance Company ("Allstate County") (collectively, "Defendants").   Under the Policy for Plaintiffs Cody, Burk, and Whitfield, respectively, Defendant Allstate Fire provides coverage for "direct and accidental loss to [the] covered auto" that results from "collision with another object or by upset of that auto or trailer" or for loss that is "not caused by collision" subject to the relevant Declarations indicating such coverage. Defs. Mtn. Ex. A at 31; Ex. C at 118; and Ex. D at 166.  Plaintiff Love's Policy provides that Defendant Allstate County "will pay for direct and accidental loss to [the] covered auto . . . and for loss caused by collision" subject to the Declarations indicating such coverage.  *Id.* Ex. B at 70.  The term "loss" is not defined under the Policy.  The Policy for Plaintiffs Cody, Burk, and Whitfield, respectively, limits Defendant Allstate Fire's

ORDER – PAGE 2

liability to "[t]he actual cash value of the property or damaged part of the property at the time of the loss." *Id.* Ex. A at 44; Ex. C at 132; and Ex. D at 180.  Under Plaintiff Love's Policy, Defendant Allstate County's liability is limited to the "[a]ctual cash value of the stolen or damaged property." *Id.* Ex. B at 89.  The term "actual cash value" is not defined in the Policy nor does the Policy otherwise describe the term.

Plaintiffs each had "an accident" involving their respective automobile that was covered by the Policy—Plaintiff Cody on August 27, 2017, Plaintiff Love on December 20, 2017, Plaintiff Burk on November 12, 2018, and Plaintiff Whitfield on August 28, 2017.  Each Plaintiff filed a claim with Defendants for property damage and, in each instance, Defendants concluded that the automobile was a total loss.  Defendants then determined the value of that vehicle and subtracted the relevant deductible.  For Plaintiffs Cody and Love, Defendants added an amount for sales tax and also "DMV fee".  Plaintiff Whitfield received an additional amount for sales tax as well as a "license and transfer fee".  Plaintiff Burk received only the value on her total-loss vehicle after Defendant also subtracted the "salvage-retain value".  Plaintiffs dispute the valuation method Defendants used in calculating the actual cash value of their total-loss vehicles.

Plaintiffs filed their Class Action Complaint in August 2019 (Doc. No. 1). Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 16).  In response, Plaintiffs filed an Amended Class Action

ORDER – PAGE 3

Complaint (Doc. No. 22).   Defendants filed a Motion to Dismiss the Amended Complaint (Doc. No. 32).   Before the motion was fully briefed, the Fifth Circuit issued a decision in *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020), which arguably impacted Plaintiffs' case.   The Court ordered briefing from the parties as to the effect, if any, of this Fifth Circuit decision on the instant case.   The parties timely filed their respective briefs.   In addition to their brief, Plaintiffs also filed a Motion for Leave to File a Second Amended Complaint (Doc. No. 41) which was fully briefed.   The Court granted Plaintiffs leave to amend their complaint in light of the *Singleton* opinion. Plaintiffs filed their Second Amended Class Action Complaint ("Complaint") (Doc. No. 45) asserting claims for declaratory relief, breach of contract (based on two alternative theories), and a violation of the Prompt Payment Act in the Texas Insurance Code.   Defendants then filed the Motion that is currently before the Court.

## II.   Applicable Law

### A.   Motion to Dismiss for Failure to State a Claim

In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted.   FED. R. CIV. P. 12(b)(6).   A well-pleaded complaint must allege facts upon which the claims are based and not be a conclusory recitation of the elements of a cause of action.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   A complaint must state sufficient facts

such that the "claim has facial plausibility" and is not merely "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff pleads a claim with facial plausibility when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable." *Id.*  The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The alleged facts must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Id.* at 570.

The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).   The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

The Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, including any attachments thereto.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The Fifth Circuit also allows the district court to consider documents attached to the motion to dismiss when those documents "are referred to in the plaintiff's complaint and are central to [the

plaintiff's] claim." *Id.* at 498–99(quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

### B.    Interpretation of Insurance Policies

This case is before the Court on the basis of diversity jurisdiction; therefore, the Court applies the law of the forum state to this case. *See Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938)).   Texas courts "construe insurance policies according to the same rules of construction that apply to contracts generally." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008).   An insurance policy using unambiguous language must be enforced as written. *Id.*   If policy language "is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). "Whether a contract is ambiguous is itself a question of law." *Id.*   Language is not ambiguous merely because differing interpretations are submitted by the parties. *Id.*; *see Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 854 (5th Cir. 2003) ("Mere disagreement over the interpretation of a provision does not make the provision ambiguous or create a question of fact.").   A genuine ambiguity "exists only if the contract language is susceptible to two or more reasonable interpretations." *Schaefer*, 124 S.W.3d at 157.

Policy language is given "its ordinary and generally accepted meaning unless the policy shows that the words used are intended to impart a technical or different meaning." *Id.*  Moreover, courts "must give the policy's words their plain meaning, without asserting additional provisions into the contract." *Don's Bldg. Supply*, 267 S.W.3d at 23 (internal quotations omitted).  "When construing an insurance policy, [Texas courts] are mindful of other courts' interpretations of policy language that is identical or very similar to the policy language at issue." *RSUI Idem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015); *see also Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.3d 119, 128 (5th Cir. 2017) ("To determine the ordinary meaning of a term not defined in the contract, [Texas] courts . . . consider the term's usage in other authorities, such as prior court decisions.").

## III.   Analysis

Defendants filed their Motion arguing several grounds exist for dismissing Plaintiffs' claims.  Defendants contend generally that: Plaintiffs' claims for breach of contract and declaratory judgment have no basis in Texas law; neither the Policy language nor Texas law require Defendants to utilize either of Plaintiffs' valuation methods to determine actual cash value of a total loss vehicle; the recent Fifth Circuit opinion in *Singleton* specifically precludes Plaintiffs' breach of contract claim based on its Cost Approach; the declaratory judgment claim is duplicative and should be

dismissed; Plaintiffs' claim for a violation of the Prompt Payment Act must also be dismissed as there is no viable breach of contact claims; and, finally, it is facially apparent from the Complaint that Plaintiffs' proposed class is not ascertainable and, therefore, should be dismissed.   Defendants also move to strike Plaintiffs' class allegations regarding the declaratory judgment claim are not appropriate because Plaintiffs primarily seek individualized monetary damages.

Plaintiffs respond that none of their claims are appropriate for dismissal.  First, Plaintiffs argue the Motion cannot be granted because how "market value" (in reference to "actual cash value") should be measured under the Policy  is an issue the Court must interpret.   Plaintiffs also assert that "the amount of market value" of a particular property is a fact question and, therefore, not appropriate for determination at the motion to dismiss stage.  Plaintiffs also argue at length that the *Singleton* opinion is not applicable to this specific case and does not require dismissal of either breach of contract claim.   However, if the Court determines *Singleton* does apply, Plaintiffs concede Count III [breach of contract under Cost Approach] must be dismissed but also contend that "Count II [breach of contract under Comparable Sales Approach] cannot be dismissed" because *Singleton* clearly calls for the Comparable Sales Approach to be used in calculating market value of vehicles.  Pls. Resp. at 14-15.  Plaintiffs assert their Prompt Payment Act claim cannot be dismissed because their breach of contract

ORDER – PAGE 8

claims survive dismissal.  Finally, Plaintiffs contend that their class allegations should not be dismissed at this stage.

Defendants reply that Plaintiffs fail to address the absence of any Texas law or other authority that requires Defendants to use either the Cost Approach or Comparable Sales Approach (or any specific method at all) in calculating "market value" with respect to "actual cash value".  Defendants argue again that *Singleton* is applicable, noting that Plaintiffs failed to distinguish this binding decision.  Defendants also point out that Plaintiffs did not address Defendants' Motion to Strike the Class Allegations.

A.    **Breach of Contract Claims**

Plaintiffs allege alternative breach of contract claims.  Plaintiffs allege that "Texas law requires the [actual cash value] of damaged property to be measured either as 'replacement cost less depreciation' or based on 'comparable sales'."  Compl. (Doc. No. 45) at 2, ¶3; *see also id.* at 6, ¶31.  Plaintiffs also repeatedly allege the Policy requires that Defendants use one of the two methods.  Compl. at 2, ¶¶5, 6; 7, ¶33; 8, ¶38; 17, ¶¶94, 97, 98; 18, ¶102; 20, ¶¶114, 118; 22, ¶129.  In "Count II", Plaintiffs allege that Defendants breached the Policy in failing to use the "Comparable Sales Approach" when determining actual cash value in the event of a total loss vehicle.  Alternatively,

Plaintiffs allege in "Count III" that Defendants breached the Policy in failing to use the "Cost Approach" when determining actual cash value in the event of a total loss vehicle.

As previously stated in the Factual Background, the Policy limits Defendants' liability to actual cash value ("ACV") of the total-loss vehicle and this term is not defined in the Policy. Plaintiffs acknowledge that Texas courts define ACV as "market value" which "means the price a willing purchaser who was under no obligation to buy paid to a willing owner who was under no obligation to sell." Compl. at 6, ¶31; Pls. Resp. (Doc. No. 47) at 12. Plaintiffs complain that the definition of "market value" may describe what the term means but "tells us nothing about how to determine or calculate the market value *amount* of a particular item." Pls. Resp. at 2. To that point, Plaintiffs allege that Texas law and the Policy requires Defendants calculate ACV of the total-loss vehicles either as 'replacement cost less depreciation' or based on 'comparable sales'." *See e.g.*, Compl. at 2, ¶¶3, 5, 6. Plaintiffs refer to "replacement cost less depreciation", which includes all fees and taxes attendant to replacing a vehicle (e.g., sales tax and registration fees) as the "Cost Approach". Compl. at 20, ¶114. Plaintiffs use the term "Comparable Sales Approach" in reference to the method using "comparable sales data from the State of Texas [which] shows the amount for which comparable vehicles were sold as to each of Plaintiffs' vehicles, in Plaintiffs' respective

counties of residence, in the month during which Plaintiffs' respective total-loss occurred." *Id.* at 18, ¶104.

### 1. *Singleton v. Elephant Insurance Company*

In *Singleton*, the insured-plaintiffs filed a putative class action against their insurer, Elephant Insurance Company ("Elephant"), asserting claims for breach of their insurance policies and violation of the Prompt Payment Act for failure to pay the required taxes and fees to purchase a replacement vehicle (which is the replacement cost less depreciation theory advanced by Plaintiffs in the case before this Court). *Singleton*, 953 F.3d at 336.  Similar to the Policy in the case at hand, the *Singleton* policies limited Elephant's liability to the "actual cash value of the stolen or damaged property at the time of the [total] loss, reduced by the applicable deductible."  *Id.* (internal quotations omitted).  The policies stated that the "actual cash value is determined by the market value, age and condition of the auto . . . at the time the loss occurs." *Id.*  The insured-plaintiffs were each involved in an accident and filed their respective claims with Elephant, which determined the vehicles were a total loss and paid them the adjusted vehicle value of the auto prior to the loss. *Id.*  Elephant did not, however, include any compensation for taxes and fees required by the state when purchasing a replacement vehicle. *Id.*  The insured-plaintiffs filed suit Elephant to recover these taxes and fees.  The district court granted Elephant's motion to dismiss,

ORDER – PAGE 11

finding the insured-plaintiffs were not entitled to replacement costs under Texas law and, therefore, they failed to state a claim for breach of contract. *Id.* The court also dismissed the Prompt Payment Act claim because there was no breach.

The Fifth Circuit recognized that the Elephant policies did not define the term "actual cash value", stating only that "actual cash value is determined by the market value, age, and condition" of the vehicle at the time of the loss. *Id.* at 338. Applying Texas law, the Fifth Circuit construed the term ACV "according to its 'ordinary and generally accepted meaning.'" *Id.* The Fifth Circuit confirmed that "actual cash value" in the context of automobile insurance is fair market value, which is defined pursuant to well-established Texas law as "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *Id.* Affirming the district court's dismissal, the Fifth Circuit held that "[t]his definition plainly excludes taxes and fees that are remitted to the state. That the state collects taxes and fees from the buyer is irrelevant to the question of fair market value because those amounts are not part of the price paid to the seller." *Id.* The Fifth Circuit explicitly stated that they "decide as a matter of law that such compensation [for the taxes and fees involved in replacing the insureds' vehicles] was not required" and, accordingly, "there is no remaining fact issue on the question of the market value of [the insureds'] vehicles." *Id.* at 339.

ORDER – PAGE 12

The Court now turns to each breach of contract claim.

### 2.    Cost Approach Method

Under this theory, Plaintiffs allege that ACV is to be measured by the replacement cost less depreciation, which includes all taxes and fees associated with purchasing a replacement vehicle.  Compl. at 6, ¶32; 7, ¶33; 20, ¶114.  Plaintiffs allege Defendants sometimes included additional amounts for some of these fees and taxes, but not all, in the ACV amount paid to certain Plaintiffs, but not everyone.  *Id.* at 11, ¶52; 20, ¶¶116–119.  Plaintiffs allege that "Defendants' failure to provide coverage for the full ACV Sales Tax and/or full title, registration and inspection fees constitutes a material breach of contract with Plaintiffs and every Class Member."  *Id.* at 22, ¶131.

The Court finds this claim must be dismissed as there is no legal support for Plaintiffs' breach of contract claim based on Cost Approach under Texas law or the Policy language.  Plaintiffs fail to point the Court to any Texas statute, code, case law, or other authority mandating this Cost Approach in the context of used vehicles, total-loss vehicles, or car insurance.  Likewise, Plaintiffs cite no provision or language in the Policy providing for, let alone requiring, this method of measurement.  In fact, Plaintiffs admit that "nothing in the Policy sets forth any measure by which ACV will be measured."  Pls. Resp. at 4.  Accordingly, for these reasons, this claim fails as a matter of law.

Moreover, applicable and binding Fifth Circuit law compels dismissal of this claim as well.  In *Singleton* (a case involving the same attorneys as the instant case), the Fifth Circuit disposed of this exact breach of contract claim that Plaintiffs assert here, that Defendants must compensate Plaintiffs for the taxes and fees associated with replacing their vehicles.  *Singleton*, 953 F.3d at 339.  The Fifth Circuit cited a complete lack of precedent under Texas law for requiring the use of this "replacement cost less depreciation" method to calculate ACV in the car-insurance context and specifically held that taxes and fees are plainly excluded from the definition of "fair market value".  *Singleton*, 953 F.3d at 338, n. 3 & n. 4.  The Fifth Circuit "decide[d] as a matter of law that such compensation was not required[.]"  *Id.* at 339.

Plaintiffs attempt to distinguish *Singleton* from this case in arguing it is not applicable.  Plaintiffs point to the absence of an "applicable 'Payment for Loss' clause" in the Elephant policies and also the policies' statement that ACV "would be determined by market value, age, and condition" of the vehicle.  According to Plaintiffs, for these reasons, "*Singleton* certainly is not binding, and Plaintiffs submit it is also not applicable."  Pls. Resp. at 10.  Neither of these reasons distinguishes *Singleton* from the case before this Court such that it is not applicable.  The Fifth Circuit's holding is directly on point with the theory presented in this breach of contract claim:

> This definition [of market value] plainly excludes taxes and fees that are remitted to the state.  That the state collects taxes and fees from

the buyer is irrelevant to the question of fair market value because those amounts are not part of the price paid to the seller. . . . [T]he basis of the complaint is that Elephant does not compensate its policyholders for the taxes and fees involved in replacing their vehicles.    Because we decide as a matter of law that such compensation was not required, there is no remaining fact issue on the question of market value of [the insureds'] vehicles.

*Singleton*, 953 F.3d at 338–39.

Pursuant to the clear language of *Singleton*, the Court must dismiss this breach of contract claim as there is no basis in Texas law for this theory.  Indeed, Plaintiffs concede that this claim must be dismissed if the Court determines *Singleton* is applicable.

For these reasons, the Court finds that Plaintiffs cannot state a claim for breach of contract under the Cost Approach (i.e., replacement cost less depreciation) upon which relief can be granted, and this claim must be dismissed.

### 3.    Comparable Sales Approach

Plaintiffs assert an alternative claim for breach of contract under the Comparable Sales Approach.  Plaintiffs allege the Policy "promises payment for ACV . . . which includes a base value that must be calculated based on Comparable Sales."  Compl. at 18, ¶102.  Plaintiffs allege this method is required not only pursuant to the Policy itself, but also under Texas law.  *See id.* at 2, ¶¶3, 6; 6, ¶31; 7, ¶33.  Plaintiffs allege Defendants have "easy access" to "Comparable Sales data from the State of Texas [which] shows

the amount for which comparable vehicles were sold as to each of Plaintiffs' vehicles, in Plaintiffs' respective counties of residence, in the month during which Plaintiffs' respective total-loss occurs."   *Id.* at 18, ¶¶103–104.   Instead, Plaintiffs allege Defendants use a "secretive and vague Total Loss Process" and this results in Plaintiffs being underpaid on the ACV of their total-loss vehicles.   *Id.* at 7, ¶35.   Because Defendants did not use this Comparable Sales Approach to calculate ACV as required under the Policy and Texas law, Plaintiffs allege Defendants breached the Policy.

In their Motion, Defendants argue that there is no basis in Texas law for Plaintiffs' alternative breach of contract claim and it fails as a matter of law. Defendants also contend that the Fifth Circuit's holding in *Singleton* applies to and requires dismissal of this claim.   Finally, because the term ACV is unambiguous, Defendants argue this claim fails because the Court cannot impose additional requirements under the Policy or expand coverage beyond what the Policy provides. Plaintiffs respond first that *Singleton* does not apply to this breach of contract claim, but that if the Court determines it does, "*Singleton* calls for the [Comparable] Sales Approach in the context of automobiles" and so "it mandates that Count II survive." Pls. Resp. at 14.   Plaintiffs then argue that regardless of whether *Singleton* mandates using this approach, the market value of Plaintiffs' vehicles is a fact question which is not appropriate for dismissal at this stage.   Pls. Resp at15.

ORDER – PAGE 16

The Court turns first to whether this claim fails as a matter of law.  As with the Cost Approach claim, the Court finds there is no Texas law requiring that ACV be calculated using Comparable Sales data in the context of used vehicles, nor does the Policy require this method of calculation.  In their Response, Plaintiffs do not refute Defendants' argument that no such authority exists and Plaintiffs fail to point the Court to any Texas statute, code, case law, or other authority mandating the Comparable Sales Approach be used in the context of car insurance (as opposed to the real-estate context).  In its own research, the Court found no Texas law setting forth how insurers must calculate ACV or market value in this context outside the definition of market value.  *See Singleton*, 953 F.3d at 338 (market value defined as "the price property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying.") (internal citations omitted).  Therefore, this is not a viable claim under Texas law.

Likewise, the Policy provides no support for this claim.  Plaintiffs allege in their Complaint that the Policy requires Defendants utilize the Comparable Sales Approach (one of two alternative methods) in calculating ACV and "Defendants' failure to utilize [this method] breached the contract with Plaintiffs."  Compl. at 19, ¶109.  Yet Plaintiffs fail to cite any Policy language requiring the use of this method.  In fact, Plaintiffs admit in their Response that "nothing in the Policy sets forth any measure

by which ACV will be measured." Pls. Resp. at 4. Instead, Plaintiffs appear to shift away from their allegations that the Policy "requires" the Comparable Sales Approach to this method being "*call[ed]* for" in the Policy, being "(at least a reasonable) way" to calculate ACV, and being the method to "*more accurately measure[]* the market value of a used vehicle than [Defendants'] approach, whatever it is[.]" Pls. Resp. at 5, 12, 14 (emphasis added). This does not, however, save their claim because Plaintiffs pled the Policy requires or mandates usage of the Comparable Sales Approach. *See also Skidmore Energy, Inc. v. KPMG LLP*, Civ. Action No. 3:03-CV-2138-B, 2004 WL 3019097, at *5 (N.D. Tex. Dec. 28, 2004)(Boyle, J.) (plaintiff cannot assert new theory or amend claim in response to motion to dismiss). As the Fifth Circuit noted in *Singleton*, "what controls is the text of the specific policy in question[.]" *Singleton*, 953 F.3d at 337 n. 2. This Policy contains no language supporting Plaintiffs' breach of contract claim and, therefore, it fails.

Plaintiffs argue this claim cannot be dismissed because the Court must interpret ACV, insisting the Policy is ambiguous because it is silent on how ACV is to be calculated. Plaintiffs then suggest that Defendants' failure to "restrict" or "foreclose" the Comparable Sales Approach (or any other method for that matter) as the measurement of ACV or market value cannot limit Plaintiffs, as the insureds, from seeking to have market value measured under this particular method. Pls. Resp. at 13–

14.  This argument is purely untenable and bordering on the disingenuous.  As in *Singleton*, ACV is not defined in the Policy at issue and is, therefore, given its ordinary and generally accepted meaning of "fair market value" (also referred to as "market value") and this is so in the car-insurance context.  *See Singleton*, 953 F.3d at 337–38 (collecting cases).  Under Texas law, "fair market value" is defined as "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *Id.* at 338.

A genuine ambiguity "exists only if the contract language is susceptible to two or more reasonable interpretations." *Schaefer*, 124 S.W.3d at 157.  That Plaintiffs would choose or desire an interpretation requiring ACV be measured using the Comparable Sales Approach does not create an ambiguity or fact question.  *See id.*; *Performance Autoplex*, 322 F.3d at 854.  Furthermore, despite Plaintiffs' suggestion to the contrary, the Policy is not ambiguous because Defendants did not specifically "restrict" or "foreclose" any method, including Comparable Sales, for measuring ACV or market value.  ACV can be given a definite legal meaning under well-established Texas law, therefore it is unambiguous and construed as a matter of law.  *See Shaefer*, 124 S.W.3d at 157; *see also Singleton*, 953 F.3d at 337–38. In giving ACV its plain meaning, the Court must not assert "additional provisions into the contract." *Don's*

*Bldg. Supply*, 267 S.W.3d at 23.  For the Court to conclude the Comparable Sales Approach is required in calculating ACV would certainly insert an additional requirement into the Policy.

The Court is very "mindful of other courts' interpretations of policy language that is identical or very similar to the policy language at issue," and no Texas court (or federal court sitting in diversity) has construed ACV or "market value" in the car insurance context to require it be measured based upon comparable sales.  *See RSUI Idem. Co.*, 466 S.W.3d at 118; *see also Cooper Indus.,* 876 F.3d at 128 ("To determine the ordinary meaning of a term not defined in the contract, [Texas] courts . . .  consider the term's usage in other authorities, such as prior court decisions.").  The Court finds that the generally accepted meaning of ACV or market value clearly does not include that it is measured using Comparable Sales.  *Cf. Singleton*, 953 F.3d at 338 (definition of market value under Texas law "plainly excludes" replacement costs less depreciation).

Plaintiffs also contend this claim cannot be dismissed because *Singleton* "mandate[es] usage of the [Comparable] Sales Approach in all circumstances" including "in the context of automobiles".  Pls. Resp. at 14–15.  Plaintiffs represent to this Court that the issue before the Fifth Circuit was one of choosing the proper, required method of determining market value in the context of vehicles—"the insurer

[Elephant] utilized the [Comparable] Sales Approach to measuring [sic] market value, while the insureds sought to use the Cost Approach." *Id.* at 14.  Claiming "[t]he import of *Singleton* is clear," Plaintiffs represent that because the insureds' proposed method of Cost Approach was rejected and they did not challenge the accuracy of Elephant's appraisal under the Comparable Sales Approach, the Fifth Circuit "calls for the [Comparable] Sales Approach [to be used] in the context of automobiles." *Id.* at 14.

This is a mischaracterization of *Singleton*.  The Fifth Circuit held "first, that each of the policyholders was entitled to the fair market value of his pre-loss vehicle and, second, that fair market value does not include the taxes and fees payable to purchase a replacement vehicle."  *Singleton*, 953 F.3d at 336.  The Fifth Circuit was not tasked with deciding whether the Cost Approach or Comparable Sales Approach is required in measuring "market value" of used vehicles.  Plaintiffs take quoted language out of context, then ascribe a conclusion which cannot be reconciled with the opinion when read in its entirety.  Indeed, the Fifth Circuit concludes as a matter of law that ACV does not include compensation for taxes and fees associated with replacing a vehicle (i.e., replacement costs less depreciation or "Cost Approach").  But *Singleton* cannot be read to mandate the use of Comparable Sales Approach as the Fifth Circuit did not address ACV or market value measured by the use of comparable sales.  Plaintiffs' representation to that effect is specious.

ORDER – PAGE 21

Finally, Plaintiffs contend that market value of a vehicle is always a fact question and, therefore, dismissal of this claim at this stage is not appropriate.  Pls. Resp. at 15. This argument also fails because Plaintiffs cannot get past the initial hurdle of sufficiently pleading their breach of contract claim.  The Court has concluded that there is no requirement under the Policy or Texas law that Defendants calculate ACV using the Comparable Sales Approach; accordingly, there is no "fact issue on the question of the market value of" Plaintiffs' vehicles.  *See Singleton*, 953 F.3 at 339.

Plaintiffs allege that "Defendants breach[ed] the Policy by not utilizing [Comparable Sales Approach] at all" in determining market value which is required by Texas law and the Policy.  Compl. at ¶33.  Plaintiffs allege that "Texas law requires the ACV of damaged property to be measured as either 'replacement cost less depreciation' or based on 'comparable sales.'  In contravention of such requirement, however, Defendants utilize neither method."  I*d.* at ¶3.  Plaintiffs further allege that they suffered damages because of "Defendants' utilization of a vague and hidden method for guessing the base value of supposedly 'comparable' vehicles rather than utilizing actual comparable sales which are listed and available from the State of Texas for every single vehicle transaction in the state."  *Id.* at ¶6.  Finally, "Defendants' failure to utilize the Comparable Sales Approach breached the contract with Plaintiffs . . . ."  *Id.* at ¶109. As pled by Plaintiffs, this breach of contract claim is not viable as a matter of law.

There is no Policy language requiring Comparable Sales as the measurement of ACV or market value, and neither does any Texas law mandate this method in calculating ACV.  Therefore, this claim must be dismissed.

### 4.    Conclusion

For the foregoing reasons, the Court concludes both of Plaintiffs' breach of contract claims must be dismissed for failure to plead a claim upon which relief can be granted.

### C.    Prompt Payment Act Claim

Plaintiffs allege Defendants violated the Prompt Payment Act in failing "to pay for the losses and/or to follow statutory time guidelines for paying claims" under the relevant sections of the Texas Insurance Code.  An insurer is liable for damages under the Prompt Payment Act only when the insured establishes the insurer is liable for the claim and the specified time to pay that claim has passed.  *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019).  The Court has concluded that Plaintiffs failed to state a claim for breach of contract as a matter of law and so those claims must be dismissed under Rule 12(b)(6).  Because Plaintiffs cannot establish the predicate liability in order to recover damages under the Prompt Payment Act, this claim must likewise be dismissed.  *See Tremago, L.P. v. Euler-Hermes Am. Credit Indem. Co.*, 602 F. App'x 981, 983–84 (5th Cir. 2015).

ORDER – PAGE 23

###### D.    Declaratory Judgment Claim

In their Motion, Defendants argue Plaintiffs' claim for declaratory judgment must be dismissed because the declaratory relief sought is duplicative of Plaintiffs' breach of contract claims.  Defendants also assert that the declaratory judgment claim must be dismissed because Plaintiffs fail to allege a viable cause of action.  Finally, Defendants urge the Court to strike Plaintiffs' class allegations as to the declaratory relief.  Plaintiffs respond that their declaratory judgment claim is not duplicative.  They also ask the Court to exercise its discretion in not dismissing this claim.

In their claim for declaratory judgment, Plaintiffs allege they "face uncertainty with regards to the rights and obligations created by the [Policy]," specifically as to "whether the Policy at issue requires that ACV be measured according to the Cost Approach or the Comparable Sales Approach."  Compl. at 17, ¶¶93-94.  Plaintiffs allege this "legal issue of contract interpretation" results in further uncertainty as to "the damages (if any) available [Plaintiffs.]"  *Id.* ¶95, 97.  Plaintiffs allege there is "an actual controversy of sufficient immediacy exists between the Parties as to whether ACV should be measured under the Cost Approach or the Comparable Sales Approach."  *Id.* at ¶99.  In their Prayer for Relief, Plaintiffs request a Court order declaring that "in the event of a total-loss, the Policy requires Defendants to pay the ACV of the total-loss

vehicle and that ACV should be measured under the Cost Approach or the Comparable Sales Approach as set forth [in the Complaint]." *Id.* at 23.

The Declaratory Judgment Act provides that the court, "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). The Declaratory Judgment Act does not create a substantive cause of action as it is only procedural. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984). It is the underlying cause of action that is actually litigated in a declaratory judgment claim. *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990). To be entitled to relief under the Declaratory Judgment Act, the plaintiff must allege sufficient facts that there exists "a substantial and continuing controversy between the two adverse parties." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). The district court enjoys broad discretion in determining whether to decide a declaratory judgment action. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991).

The Court found that Plaintiffs failed to plausibly allege a claim for breach of contract or violation of the Prompt Payment Act.   "Where all the substantive, underlying claims have been dismissed, a claim for declaratory judgment cannot survive."  *Verde Minerals, LLC v. Koerner*, Civ. Action No. 2:16-CV-199, 2019 WL 1429789, at *3 (S.D. Tex. March 29, 2019) (quoting *Mann v. Bank of New York Mellon*, Civ. Action No. 4:12-CV-2618, 2013 WL 5231482, at *8 (S.D. Tex. Sept. 16, 2013)). Accordingly, there are no facts that permit the inference of a current controversy between Plaintiffs and Defendants.  *See Bauer*, 341 F.3d at 358.  Because each of their substantive claims failed to state a cause of action upon which relief can be granted, Plaintiffs have no underlying claim to which they can tether their claim for declaratory judgment.  *See Basye v. Wells Fargo Bank, N.A.*, Civ. Action No. 3:12-CV-4098-K, 2013 WL 2110043, at *4 (N.D. Tex. May 16, 2013) (plaintiff's failure to plausibly allege a substantive claim upon which relief could be granted was fatal to her claim for declaratory relief); *Verde Minerals*, 2019 WL 1429789, at *3 (claim for declaratory judgment dismissed where plaintiff failed to state a claim for which relief could be granted on its substantive claim of nonpayment of proceeds).  The Court would also decline to exercise its discretion to determine Plaintiffs' claim for declaratory judgment for the same aforementioned reasons.  *See Purdin v. Wells Fargo Bank, N.A.*, Civ. Action

No. 3:15-CV-3956-D, 2016 WL 1161808, at *5 (N.D. Tex. March 23, 2016)(Fitzwater, J.).  Therefore, Plaintiffs' claim for declaratory judgment is dismissed.

### E.    Class Allegations

In their Motion, Defendants ask the Court (1) to dismiss Plaintiffs' class allegation because it is facially apparent from the Complaint that the purported class is not ascertainable and (2) to strike the class allegations as to the declaratory relief claim because the primary relief sought is an individualized award of monetary damage. Plaintiffs respond that it is premature to rule on the issue that the alleged class is not ascertainable, especially where no discovery has taken place.  Plaintiffs did not respond to Defendants' motion to strike.  Because none of Plaintiffs' claims survive Defendants' Motion to Dismiss, the Court need not rule on Defendants' Motion to Strike the Class Allegations.

## III.    Conclusion

The Court finds that Plaintiffs have failed to state a claim for breach of contract or violation of the Prompt Payment Act as a matter of law.  Furthermore, the Court concludes that Plaintiffs' claim for declaratory judgment must be dismissed as there is no viable substantive claim and, alternatively, the Court declines to exercise its

discretion to determine this claim.  The Court, therefore, **grants** Defendants' Motion

to Dismiss and all of Plaintiffs claims are hereby **dismissed**.

       **SO ORDERED.**

Signed February 3rd, 2021.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

ORDER – PAGE 28